MINDS et al. v. PENNSYLVANIA R. CO.

BULAH COAL CO. v. SAME.

(District Court, E. D. Pennsylvania. November 6, 1916.)

Nos. 2422, 2424.

1. PARTNERSHIP ⬅258(2)—INTERSTATE COMMERCE ACT—ACTION BY SHIPPER FOR DAMAGES—ABATEMENT.

 The right of action given by the Interstate Commerce Laws to a partnership to recover damages suffered by it through the discriminatory acts and unfair practices of a railroad carrier is not lost in whole or in part by the death of one of the partners.

 [Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 564½, 590, 591; Dec. Dig. ⬅258(2).]

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. CARRIERS &⇒36—INTERSTATE COMMERCE ACT—ACTIONS BY SHIPPER FOR
   DAMAGES.
      The damages in such an action are to be found by the jury on all the
   evidence, including the findings of the Interstate Commerce Commission,
   and in assessing such damages the jury may consider as an element the
   lapse of time between the incurring of the damages and the rendering
   of the verdict, not exceeding the equivalent in amount of lawful interest.
      [Ed. Note.—For other cases, see Carriers, Cent. Dig. § 95; Dec. Dig.
   &⇒36.]

At Law. Actions by James H. Minds and others and by the Bulah
Coal Company against the Pennsylvania Railroad Company. Sur rules
in arrest of judgment and for a new trial. Rules discharged.

Patterson & Gleason, of Clearfield, Pa., Henry W. Moore and John
H. Minds, both of Philadelphia, Pa., and George M. Roads, of Potts-
ville, Pa., for plaintiffs.

Henry Wolf Bikle and Francis I. Gowen, both of Philadelphia, Pa.,
for defendant.

DICKINSON, District Judge. These cases were, by agreement,
submitted to the one jury and tried together. They arise out of the
Interstate Commerce Laws and the Elkins Act (Comp. St. 1913, §§
8563–8604). The controlling principles of law involved may be thus
formulated:

[1, 2] After an order has been made by the Interstate Commerce
Commission in favor of a complainant shipper against a railroad car-
rier for the payment of a damage award, proceedings brought in court
because of the refusal of the carrier to comply with the order are
properly for the damages sustained by the complainant (limited to the
amount set forth in the pleadings), and such proceedings are de novo,
and the damages are to be found by the jury under all the evidence,
including the findings of the Commission, which are made evidence
by the acts of Congress. The right of action given by the Interstate
Commerce Laws to a partnership to recover damages suffered by it
through the discriminatory acts and unfair practices of a railroad car-
rier is not lost in whole or part by the death of one of the partners.
The common-law rule that personal actions die with the person has no
application. The jury, in assessing damages, may consider as an ele-
ment the lapse of time between the incurring of the damage and the
rendering of the verdict, and allow for this in the assessment. Such
element of damage, however, could not exceed the equivalent in amount
of lawful interest. These principles are in consonance with and can
be deduced from the rulings in a number of cases, of which it is suffi-
cient to refer to Texas Ry. Co. v. Abilene Co., 204 U. S. 442, 27 Sup.
Ct. 350, 51 L. Ed. 553, 9 Ann. Cas. 1075; I. C. C. v. Alabama Ry. Co.,
168 U. S. 174, 18 Sup. Ct. 45, 42 L. Ed. 414; Western N. Y. v. Penn
Co., 137 Fed. 343, 70 C. C. A. 23; P. R. R. v. Clark, 238 U. S. 456, 35
Sup. Ct. 896, 59 L. Ed. 1406. We can get a sufficiently clear view of
the instant cases to which these broad principles are to be applied
through an outline statement of the main facts, followed by a more
particular statement of the special points now made.

The plaintiffs are mine owners or operators. The defendant is a railroad carrier, within the meaning of the law regulating interstate commerce. The plaintiffs deemed themselves the victims of discriminatory rules and practices of the defendant in its car distribution. A complaint was made to the Commission. This coupled a request for administrative rulings with a demand for an award of damages. The Commission condemned the regulations of the defendant and formulated the just rule of car distribution, convicted the defendant of discrimination, and found the plaintiffs to have been damaged, and the amount of the damage. An order was accordingly made in favor of the plaintiffs. This order was not complied with by the defendant, and it was followed by the bringing of these actions. The basic question, the answer to which supplies answers to most of the questions now involved in the cases, is presented in these queries: What is the plaintiffs' right of action? Is it an action for damages, or is it limited to an enforcement of the order of the Commission so far as in favor of the plaintiffs? Important obvious consequences flow from the answer to this question. The answer must be sought in the acts of Congress.

The genesis of these laws will afford us some light. The evils which it was the purpose of the law to suppress are too glaring to call for statement. They arose out of the acts and practices of the carriers. The law condemns them as unlawful, imposes a penalty, and gives (which is the feature with which we are now concerned) a right of action to any person injured. Many, if not the main, features of such a law must be administrative and remedial. In consequence the carriers were required to file schedules of the rates and regulations adopted. A commission was constituted to determine the fairness of such rates and regulations, to annul them if unjust or discriminatory, and formulate just regulations in their stead, and modes of redress to the injured party were provided. It is to be observed that the carriers in the first instance may file, and, indeed, are required to file, schedules and regulations approved only by themselves. The responsibility, however, is imposed upon them to see to it that the regulations comply with the law. If they do, although loss results, there is no injury in the legal sense. If they do not, the resulting damage becomes a legal injury, for which a right of action is given.

The remedies provided are these: Any form of action, otherwise open to the injured party, is preserved to him. He is given the right to resort to an action at law, or he may, at his option, ask the Commission to award him damages. If he brings his action at law, it is necessarily based upon two propositions: One is that the regulation of which he complains is unlawful, and the rule which he seeks to have established is the proper one. Whether this be a conclusion of law or a finding of fact is an academic distinction, but it must in fact appear. The other is the fact and amount of his damage. The first is an administrative question, and for obvious reasons is committed to the Commission, and to the Commission alone, to find. The second is a juridical question, which may be submitted to the courts, or to any tribunal having

the lawful power to determine it. The consequence follows that recourse to the Commission is only in part optional.

The administrative questions must be first determined by the Commission, because, if an action were brought at law, without this first finding, the plaintiff could not make out his case. His real option is this: He may submit the administrative question alone to the Commission, and thus, having established his right to recover his damages, may bring his action at law, and prove both his injury and the amount of his damages, or he may exercise the right given him by the statute by submitting both questions to the Commission. If he takes the first course, the action is one for damages and subject to well-known rules. If he takes the second course (as these plaintiffs did), what results? Had the right of trial by jury not been involved, Congress would doubtless have given the award of the Commission the effect of a judgment. The complainant, being a volunteer, is concluded by what the Commission does. The defendant is not concluded. If the defendant complies with the order, the plaintiff is done. If the order is not complied with, the plaintiff may have recourse to the courts (federal or state), setting forth his injury, the fact of his complaint to the Commission, and the order made thereon, and that it has not been complied with. In the words of the statute, the cause then proceeds as an action for damages, except that the findings of the Commission are made evidence, and the defendant must pay costs and counsel fees.

If this language of the statute is taken at its face value, and the action regarded as one for damages, the whole proceeding is simplified. If the view now presented by the defendant is taken, a host of baffling queries rush upon the mind. The obstacles which shut out this view may be summed up in the observation that, if such be the law, the defendant is given the undeserved advantage of being in a position in which it may gain, but cannot lose, and all it risks in this speculation are costs and counsel fees. In this view the jury would be required to find under all the evidence (including the order), not the damages (up to the limit of the award), but how much of the damage found by the Commission is shown by the evidence of the defendant at the trial to have been improperly allowed. Without meaning it as a statement of defendant's position, the practical effect may be presented by this illustration: If the Commission found a loss in tonnage of 1,000 tons, and a money loss of $2 per ton, and a consequent damage of $2,000, the plaintiff would be bound by each of these findings, but the defendant would not. If the defendant showed at the trial that the money loss per ton was only $1, the jury must apply this to the 1,000 tons found by the Commission, and could not render a verdict for over $1,000, notwithstanding that it also further appeared at the trial that the Commission had made another mistake, and that the true tonnage was 2,000 tons, and the actual damage $2,000. In other words, any mistakes made by the Commission against the defendant must be corrected by the jury; but mistakes made against the plaintiff cannot be corrected, notwithstanding the fact that one may offset the other.

This is inconsistent with the rulings in the cited cases, and under them we do not feel at liberty to consider the question an open one.

The action is one for damages, the proceedings in which are de novo, and in the nature of an appeal, with the added consequences ingrafted upon it by the act of Congress. Whether the jury could award a larger sum in damages than the Commission allowed does not arise here. It might be conceded that under the act of Congress the plaintiff was so limited, without affecting the character of the action as one for damages. This disposes of practically all of the questions raised. A formal disposition is made of all of them in the order in which they are set forth in the reasons for a new trial.

(1) We do not think the verdict excessive. There was a substantial reduction from the sum awarded by the Commission. This, under the act of Congress, would have been a supporting basis for a larger verdict. As the order is evidence, it cannot be said the verdict has no support in the evidence.

(2–6) The proposition advanced in the points upon which are based reasons 2, 3, 4, 5, and 6 is that a partnership, which suffers injury, loses its right to recover (in whole or in part) if one of the partners dies. We think this proposition was properly negatived. The minor point made as to the interregnum from April to October was in effect waived, and because of this not answered. Under the facts of the case there was no justification for insistence upon it. To have submitted it to the jury would have merely been confusing. To obviate the necessity of instructions the trial judge inquired of counsel whether there was any dispute over the dates as of which the damages were to be assessed. The reply was there was none. The main point was ruled against the defendant. It was invited, if not satisfied with the general answer, to ask for a specific answer to any point submitted. No answer was requested to this point. This waived the minor point, and we do not recognize the right of defendant to now complain.

(7–13) The points referred to in reasons 7 to 13, both inclusive, were answered in the general charge. Specific answers were waived by defendant. The point now made we understand to be that the charge was erroneous. Whether it was or not is determined by the correctness of the theory on which the case was submitted to the jury. The points submitted were affirmed, except in so far as they required the jury to find, not what the damage was (up to the limit of the award of the Commission) under all the evidence (including the award), but what the damage was under the findings of the Commission as corrected by the evidence submitted by the defendant. This has been sufficiently discussed. The points could not be affirmed categorically, because they ignore the provision of the act of Congress which makes the findings of the Commission (including the amount of the damages) evidence. They are as much evidence as are the items of which the damage is made up.

(13 and 14) Points 16 and 17 here referred to were affirmed.

(15) This point asked for binding instructions to the jury to find for the defendant. The point was negatived, and we still think properly so.

(16) The eighteenth point was based upon nothing in the case, and the court was not asked to answer it. If it is meant to invoke the rule which pertains in Pennsylvania of the consequences of delay in pay-

ment due to ·an unconscionable demand, the attention of the court should have been directed to this feature. In these cases ·no such question was raised.

The remaining 16 reasons are really duplications of those discussed (being stated separately in each case), except the sixteenth. This complaint has a real basis. We would not, however, feel justified in subjecting the parties to the delay and expense of a new trial because of the inadequacy of the charge in this feature. The reason is this: The testimony referred to was that of an intelligent and fair witness, with a firm grasp of the facts to which he testified. These were all book-keeping or mathematical facts as he had no knowledge except that derived from the figures submitted to him. The trial judge had in mind the definite purpose to advert to this testimony and its application to the case, but he was diverted from this purpose, and it was forgotten. Counsel for defendant were in no way responsible for this lapse, and their client should not suffer for it. Nevertheless the fact is they did not call attention to the oversight. Neither was it the fault of the plaintiffs, and they are in no default, and the loss should not fall on them.

The rule for a new trial is discharged, and plaintiff may enter judgment in each case on the verdict.