### PENNSYLVANIA R. CO. v. MINDS (two cases).
### SAME v. MINDS et al.

(Circuit Court of Appeals, Third Circuit. July 20, 1917. Rehearing Denied October 8, 1917.)

Nos. 2194, 2195.

1. COMMERCE &#x262D;94—INTERSTATE COMMERCE COMMISSION—AMENDMENT OF PLEADING.

A railroad company discriminated against a partnership engaged in coal mining and against the succeeding firm, a copartnership composed of one of the original partners and the widow of the deceased partner. The Interstate Commerce Commission made awards in favor of the new firm

and of the surviving partner of the old firm. Separate suits were instituted on such awards, but they were confused, so that the surviving partner sued on the award in favor of the second firm, and vice versa. *Held*, that the railroad company could not complain because, more than one year after the awards of the Interstate Commerce Commission were made, the trial court allowed them to be transposed so that each action was upon the proper award; such amendment not affecting its rights.

2. APPEAL AND ERROR ⬳1002—REVIEW—VERDICT.
   Where the evidence was conflicting, the defendant is not entitled to binding instructions, and the verdict of the jury is conclusive on error.

3. COMMERCE ⬳95—INTERSTATE COMMERCE—DISCRIMINATION—AWARDS BY COMMISSION.
   An award by the Interstate Commerce Commission in favor of a shipper on account of discrimination in furnishing cars is only prima facie evidence of the amount of the damages, and in an action thereon that question can be litigated.

4. APPEAL AND ERROR ⬳930(1)—REVIEW—VERDICT.
   Where verdict, in an action by shipper for damages for railroad company's discrimination in the furnishing of cars, was much less than the amount of the award by the Interstate Commerce Commission, and there was evidence as to the damage other than the award of the commission, the verdict will be presumed to have been based on the evidence instead of the award, and is not subject to attack on the ground that the commission in making its award adopted the wrong theory as to distribution of cars.

5. APPEAL AND ERROR ⬳216(1)—REVIEW—QUESTIONS PRESENTED FOR REVIEW.
   Where the trial court, after giving a charge which fairly presented the controversy, stated that counsel might call his attention to any points which they would like to have specifically answered, defendant, having been cast below, cannot raise in appellate court matter not then called to the trial court's attention.

6. COMMERCE ⬳97—CARRIAGE OF GOODS—DISCRIMINATION—AWARD BY COMMISSION—INTEREST.
   Where the difference between the verdict, in an action against a railroad company for damages for discrimination in furnishing cars, and the amount originally claimed before the Interstate Commerce Commission, was not so great as to show an undue inflation of the claim, the allowance of interest by the commission from the date of the award is not subject to attack; it not being erroneous to allow interest in such proceeding.

7. APPEAL AND ERROR ⬳709—REVIEW—ABUSE OF DISCRETION.
   Where, in an action against a railroad company for damages for discrimination in furnishing cars, the trial court awarded counsel fees, stating that they were confined to compensation for services in the trial court, and the facts on which the award was made did not appear, the appellate court cannot review the award on the ground of an abuse of discretion.

Appeal from the District Court of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson, Judge.

Action by James H. Minds, surviving partner of the firm of James H. Minds and William J. Matz, a partnership which lately traded as the Bulah Coal Company, against the Pennsylvania Railroad Company, consolidated with an action by James H. Minds and Julia A. Matz, copartners trading as the Bulah Coal Company, against the same defendant. There were judgments for plaintiffs (237 Fed. 267), and defendant brings error. Affirmed.

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Henry Wolf Bikle and Francis I. Gowen, both of Philadelphia, Pa., for plaintiff in error.

George M. Roads, of Pottsville, Pa., H. W. Moore and John H. Minds, both of Philadelphia, Pa., and James A. Gleason, of Du Bois, Pa., for defendants in error.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges

McPHERSON, Circuit Judge. In these cases the plaintiffs filed petitions in the District Court to enforce orders of reparation made by the Interstate Commerce Commission (23 Interst. Com. Com'n, 192); the orders being based on the railroad's discrimination against the Bulah Coal Company in the distribution of cars (20 Interst. Com. Com'n, 52). Two periods are involved, one (No. 2194), from July 1, 1902, to October 1, 1904, and the second (No. 2195), from October 1, 1904, to June 30, 1907. The cases were tried together, but separate verdicts and judgments were entered, in No. 2194 for $16,092.92, and in No. 2195 for $33,617.37.

During the first period, James H. Minds and William J. Matz, a partnership known as the Bulah Coal Company, leased and operated a bituminous coal mine known as Webster No. 4, situated on the Tyrone division of the railroad's system in the Clearfield district of Pennsylvania. The mine had no other outlet to market. Matz died in April, 1904, and Minds continued the operation as surviving partner until October 1st. On that date a new partnership bearing the same name, composed of Minds and Julia A. Matz, the widow, executrix, and sole legatee of William J. Matz, took over the mine and went on with the business until June 30, 1907. During the five years in question, whenever the railroad's available supply of cars was not large enough to carry the aggregate production of the district, the cars were allotted to the mines on a percentage basis; this percentage being determined in accordance with the railroad's rule.

[1] The coal company objected to the rule as unfair and discriminatory, and in June, 1907, attacked it before the commission. Two proceedings were brought, the first by Minds as surviving partner, covering the first period; the claim was for about $80,000 damages, and in March, 1912, a reparation order was entered for about $18,-600 with interest from June 28, 1907. The second proceeding was by Minds and Julia Matz, trading as the Bulah Coal Company, and covered the second period; the claim was for about $75,000 damages and the order, also entered in March, 1912, was for about $31,700, with interest from June 28, 1907. Neither award was paid, and on each a separate action was brought. By mistake the awards were confused, so that Minds as surviving partner sued on the order entered in favor of Minds and Julia Matz, while Minds and Julia Matz sued on the order entered in favor of Minds as surviving partner. This was an obvious blunder, and on April 10, 1916, the District Court allowed the orders to be transposed, the railroad objecting, then and now, on the ground that such an amendment could not be granted after one year from the date of the orders. As we understand, however, this position is

not much relied on, and in any event we see no reason to say anything about it except to approve the action of the district court in setting right what was a plain' and harmless mistake. Its correction did the railroad no possible injury.

In passing on the coal company's complaints, the commission decided that the railroad's rule was wrong, and had resulted in discrimination; and then announced the correct rule, which showed that the coal company had not received its proper quota. The railroad contends that the commission has not disclosed the basis on which the rule rests, but has merely stated in effect that the coal company could, and would, have mined and shipped certain additional tonnage, if its share of cars had been received. This contention is not correct, as a reading of the commission's full reports on this subject will show. Ohio R. R. Com. v. Hocking Valley Ry., 12 Interst. Com. Com'n, 398; Traer v. Chic. & Alt. R. R., 13 Interst. Com. Com'n, 451; Hillsdale Co. v. Pa. R. R., 19 Interst. Com. Com'n, 356; Minds v. Pa. R. R., 20 Interst. Com. Com'n, 52.

The basis of the commission's orders is certain findings of fact concerning the capacity at which the mine should be rated; the number of working days that should constitute an average working month; the number of additional tons that the coal company could and would have mined, sold, and shipped, during the whole five years, if the mine had received its proper share of cars; the amount of profit that would have been made on the estimated additional tonnage; the actual cost of mining per ton; and the estimated cost if the mine had received its proper share of cars. In the District Court, the coal company offered the evidence of several witnesses in addition to the findings and orders. The railroad did not, and does not, dispute the findings except in two particulars: (a) It denies that the coal company could have mined coal at a cost of 88 cents per ton, even if the proper share of cars had been furnished; and (b) it disputes the estimate of additional tonnage that the coal company would have mined and shipped during the second period, if such share had been received.

As to the first particular, the railroad insists that the coal company could not possibly escape two items of cost, namely, the mine rate of wages and the royalty, and that, even if nothing else than these items were charged against the additional tonnage, the cost of mining both the coal that was actually brought to the surface, and the estimated additional coal, would necessarily have been more than 88 cents, the cost found by the commission. And, in further reference to the cost of mining during the second period, the railroad insists that the inevitable cost would have embraced two other items in addition to the mine rate of wages and the royalty. To the railroad's evidence concerning this first particular, the coal company offered some evidence in reply, and thereupon the railroad asked for instructions whose refusal is assigned for error.

The other particular referred to relates to the second period only. The railroad contends that, when the commission estimated the additional tonnage that could and would have been mined and shipped if the coal company had received its proper share of cars, they disre-

garded their own rule of distribution. This contention bears directly upon the present controversy, because the amount of the coal company's damage depends largely on the number of cars it should have received. It would have made profits if it had been able to ship, and it could have shipped if it had received the cars, so that the railroad's failure to furnish the cars bears directly on the question of damage. The railroad's argument is that in substance the commission's rule provides as follows: The capacity of each mine in the district is to be rated by adding the tons it could produce (its physical capacity), and the average number of tons it could sell (its commercial capacity), and dividing the sum by two; the capacity or rating thus ascertained being the basis on which cars are to be apportioned during percentage periods. The first step in determining the number of cars to be allotted to each mine during such periods is to determine the proportion that would normally go to the mine. This is obtained by taking the aggregate ratings of all the mines in the district and fixing the proportion that each rating bears to the aggregate. The next step is to determine how many cars are available, and in so doing all the cars in the four classes described below are to be put into one pool. Whenever there are cars enough to carry all the coal produced, no question of diminishing the number for each mine arises; but during percentage periods the question does arise continually, for under the commission's rule the three classes of "assigned" cars must first be allotted to the mines that have a prior right thereto, and this allotment inevitably compels a readjustment of the "unassigned" or "system" cars that each mine is to receive. There are four classes of coal cars: (1) Individual or private cars, owned or leased by a shipper; (2) cars intended to carry fuel for the Pennsylvania Railroad itself; (3) cars sent by foreign railroads intended to carry their own fuel supply; and (4) other cars furnished by the railroad for general commercial use. The first three classes are "assigned" cars, and the cars in the fourth class are "unassigned" or "system" cars. The rule requires that the assigned cars shall first be given to such mines as may be designated either by the owners or lessees of the private cars, or by the respective railroads, and requires that these three classes shall be thus allotted in the first instance, without regarding the number of cars to which the particular mine might be entitled if its rating alone were considered; the result being that, when the system cars come to be distributed, they cannot be properly allotted without first taking into account the previous allotment of the assigned cars. For example: If a mine has already received assigned cars, these must be counted against the share to which its rating (if taken alone) would entitle it, so that, if the assigned cars already received equal or exceed the mine's share estimated according to its rating alone, it receives none of the system cars; while, on the other hand, if the assigned cars already received are fewer than its rating (if considered alone) would entitle it to receive, the mine does receive some of the system cars, but only so many as will bring the total number up to the rating. On this point, the railroad contends that the commission undoubtedly disregarded its own rule in estimating the additional tonnage that would have been mined and shipped by

the coal company during the second period, and has ascertained such tonnage by a different and incorrect method.

The railroad complains also about the damages recovered as interest by the plaintiffs, its position being this: Minds as surviving partner claimed about $80,000, and was awarded only about $18,600; Minds and Julia Matz claimed about $75,000, and were awarded only about $31,700—each sum to bear interest from June 28, 1907. The railroad objects to the commission's allowance of interest, and also to any allowance of interest in the District Court, on the ground that the findings and orders of the commission and the evidence offered at the trial show clearly that the plaintiffs' demands were grossly and unfairly inflated.

Finally, after the trial, counsel fees were asked for and allowed. And these are now objected to as excessive, and also as without legal warrant; the second objection being put on the ground that the fees should have been confined to the services of counsel in connection with the suits in the District Court.

[2] 1. The railroad complains, but we think without sufficient warrant, that the trial judge erred in what he said to the jury in submitting the question how much the cost of mining would have been, if the plaintiffs had received their proper share of cars. We think his instructions were sufficient, and see no occasion to discuss them. Moreover, on this subject the evidence was conflicting, and, since the credibility of opposing testimony was involved, the railroad was not entitled to binding instructions. The verdict on this point must be accepted as final.

[3, 4] 2. The next matter concerns the second period only, and presents the objection on which the railroad seems to lay most weight, namely, that in making the orders of reparation the commission followed, not its own, but another, rule of distribution. In this respect the railroad contends that the situation is very much like the situation in Railroad v. Jacoby, 242 U. S. 89, 37 Sup. Ct. 49, 61 L. Ed. ——, and indeed is controlled by that decision. In our opinion, an important difference exists for the following reasons:

Before the commission the Jacoby Case and the case now in hand were considered in the same group, and both cases attacked the railroad's rule of distribution on the ground of discrimination. When the Jacoby Case came to be tried in the District Court, the plaintiff offered no other evidence than the commission's order, whereupon the railroad offered tables showing in detail that during the period then in question certain favored companies had received cars amounting to 59.9 and 59.6 per cent. of their ratings. Jacoby had received a much smaller percentage, and the relevancy of the tables was, not so much to prove the discrimination, as to show in connection with other evidence that the commission had calculated Jacoby's damages by using precisely the same percentages, and had thus permitted recovery (as the Supreme Court said)—

"* * * not upon the basis of damages sustained by reason of the illegal discrimination practiced against the plaintiffs as found by the commission, but upon the basis that (Jacoby was) entitled to receive cars equal in ratio to those illegally and preferentially given to the certain favored companies named in

the tables. The effect of the enforcement of such rule would be, not to give the shipper the damages which he actually suffered, but would base the recovery upon a rule which is condemned as to others, because of its discrimination in their favor—a result manifestly not intended by the act of Congress."

In the District Court Jacoby recovered the amount thus improperly awarded by the commission, with interest thereon, and the Supreme Court held that such a result was wrong; and that the jury should have been instructed that, if the commission's award was in fact based on the proposition that Jacoby also was entitled to cars amounting to 59.9 and 59.6 per cent., the award was erroneous, and the plaintiff should not have recovered. The Supreme Court said:

"It is urged that the testimony before the commission is not all in the record, and that for aught that appears the commission may have reached its conclusion and awarded damages upon other and competent proofs, and it is insisted that the coincidence of the amount as awarded and the amount ascertained by the use of the percentages contained in the tables may not necessarily have controlled the action of the commission. But it is difficult to reach the conclusion that the commission could have arrived at the result so exactly corresponding with the one obtained by the use of the percentage, shown in the tables, except by actually using them to ascertain the sum which is exactly the amount resulting from their application. The commission might have approximated the same result by using other and legal means to ascertain the damages sustained, but when it is demonstrated that the use of the percentages precisely produces the amount awarded to the dollar and cent, it seems almost mathematically certain that the result could have been reached in no other way. At least, we think that the testimony was in such shape that, as we have already said, the company was entitled to the specific request upon this subject submitting the matter to the jury."

In some respects the case now in hand is like Jacoby's case, but it differs in what we regard as a material particular. Laying aside the fact that the present plaintiffs offered other evidence than the commission's findings and orders, we think it important to observe that the principal of each verdict is for a sum considerably less than the principal of the commission's award, so that the recovery here does not rest on the award alone, but is undoubtedly based on all the evidence touching the subject of the plaintiffs' damage. As an award by the commission is only prima facie evidence of the amount of damage, it follows that on the trial in the District Court the railroad may attack the amount, and, if the evidence show that the award is incorrect, the jury should follow the evidence and reject the award. We do not decide the question whether a plaintiff can recover more than the commission awards, but undoubtedly the railroad may prove that the sum is too large. As the verdicts here demonstrate, the jury did not follow the orders of the commission, and it seems to us therefore that, even if the awards be calculated on the wrong theory, the plaintiffs have not recovered on this theory, but on other evidence, and are not to be charged with the commission's possible mistake. In the Jacoby Case the jury repeated the commission's mistake precisely, and in this respect the case before us appears to be materially different, for the jury here has rejected the commission's calculation, and has reached a different result.

[5] We have considered the railroad's position at some length in order to present it to the Supreme Court if the case should be reviewed

by that tribunal, but in our opinion the question is not before us on this record for the following reason: The district judge gave to the jury a clear and painstaking explanation of the questions submitted, and in general terms he instructed them about the proper method of distributing cars; but, no doubt by inadvertence (as he himself has stated in 237 Fed. on page 272), he did not call their attention in detail to some of the evidence, particularly to a table or blueprint that was regarded by the railroad as of much importance. Some of the railroad's requests for charge were based on this table, and, indeed, the argument of counsel in this court rested in large measure thereon. At the end of the charge the trial judge said:

"I think I have gone over the subject-matter of all of the different points submitted to me. So far as they are affirmed in the general charge they are affirmed, and so far as not affirmed in the general charge they are disaffirmed, and counsel, if they choose, may call my attention to any specific point which they would like to have specifically answered."

This was a plain request to counsel to call his attention to any omission, and in fairness to him should have been then complied with. But he was not asked to answer specifically any of the railroad's points. On the contrary, counsel replied as follows:

"In the first period we do not dispute the lost tonnage nor the cost. In the second period we dispute the correctness both of plaintiff's cost figures and also the tonnage. We ask that the court so charge."

The court immediately complied with this request, whereupon each party sent out its own calculation of the amount due in order to save the jury from labor. As it seems to us, the railroad should not now be allowed to complain, as it does complain by several assignments of error, that some of its requests for instruction were not given. The situation is dealt with so well in Thompson v. Lumber Co., 55 Pa. Super. Ct. 327, that we content ourselves by repeating what was said in that case by President Judge Rice:

"The charge as a whole was a clear, comprehensive, and impartial presentation of the issues of fact to be decided, and if there was omission to call attention to, or comment upon as fully as might be deemed desirable, specific facts or phases of the evidence, it was an inadvertency, which, if the judge's attention had been called to it doubtless would have been corrected. The decisions are numerous, and are founded on just principles essential to the avoidance of undue expense and delay in the adjudication of cases, that inadvertent mistakes or omissions in reviewing the testimony should be called to the attention of the court before the case goes to the jury, so that the error, if there is one, may be corrected before it has done any harm. As to such inadvertent omission or mistake, it has been said, and we think the principle is applicable to these assignments, that 'a party may not sit silent and take his chance of a verdict and then if it is adverse complain of a matter which, if an error, would have been immediately rectified and made harmless.' Com. v. Razmus, 210 Pa. 609 [60 Atl. 264]; Com. v. Minney, 216 Pa. 149 [65 Atl. 31, 116 Am. St. Rep. 763]; Medis v. Bentley, 216 Pa. 324 [65 Atl. 758]; Slavin v. Northern Cambria Street Railway Co., 47 Pa. Super. Ct. 454; Com. v. Eaby, 52 Super. Ct. 619."

[6] 3. With regard to the allowance of damages for delay in the form of interest, we find no error to correct. Although such an allowance in actions of tort is not a matter of right, it is nevertheless permissible and often forms part of a verdict. On the facts of this

case we cannot say that no allowance should have been made. The only ground of the objection is the difference between the amount originally claimed before the commission and the amount finally adjudged to be due, and this difference is not of itself sufficient to require us to decide as a matter of law that the plaintiff's original claims were unduly inflated or made in bad faith. Besides, if the subject should be within our power on this record, the amount of this allowance, whether by the commission or by the jury, does not seem to us excessive, and we see no reason on this account to interfere with the verdict.

[7] 4. As to the award of counsel fees, we are similarly uncertain. We accept the statement of the trial judge that he confined himself to compensation for services in the District Court, and, as we do not know what facts he had before him, we are unable to say that any abuse of discretion appears from the mere amount of his award.

In each case the judgment is affirmed.