## PITTSBURGH & W. V. RY. CO. et al. v. UNITED STATES.

(District Court, W. D. Pennsylvania. January 4, 1924.)

No. 945.

1. Commerce ☞91.—On claimed grounds for avoidance of Interstate Commerce Commission's order for reparation, general equity jurisdiction could not be invoked.

On none of the claimed grounds for avoidance of Interstate Commerce Commission's order for reparation for preferential practices in distribution of empty cars, because based on erroneous legal assumption of liability of one carrier for acts of another, because conclusions were arrived at by following legally erroneous method, because order is unsupported by evidence, and because order is arbitrary, can the general equity jurisdiction be invoked; a complete, practicable and adequate remedy at law being available.

2. Equity ☞51 (2)—Separate actions by unrelated parties, based on reparation award by Interstate Commerce Commission, not multiplicity of suits.

There is not a multiplicity of suits, for prevention of which equity may be invoked, though each of unrelated parties proposes to bring an action for damages under Interstate Commerce Act Feb. 4, 1887, § 16, as amended by Act June 18, 1910, § 13 (Comp. St. § 8584), against a carrier, based on the same order of the Interstate Commerce Commission for reparation for preferential practices in distribution of empty cars.

In Equity. Suit by the Pittsburgh & West Virginia Railway Company and James C. Davis, Director General of Railroads, as Agent, against the United States. Decree for the United States.

Suit under Commerce Court Act (36 Stat. 539) and Urgent Deficiencies Act Oct. 22, 1913 (38 Stat. 219 [Comp. St. §§ 992, 994]), to enjoin, set aside, annul, or suspend order of Interstate Commerce Commission, August 4, 1920, in Avella Coal Co. v. Pittsburgh & W. Va. R. Co., 58 I. C. C. 313, in which it found the carriers' practices in the distribution of coal cars in the Avella District in Pennsylvania and West Virginia during the period from October 1, 1917, to March 22, 1918, to have been unduly prejudicial to the coal mining companies and that further proof might be made of the amount of the damages sustained on account thereof. Final hearing on motion of the Pittsburgh & West Virginia Railway for permanent injunction and on motions of defendants to dismiss for want of equity.

Frank M. Swacker, of New York City, and John F. Finerty, of Washington, D. C., for petitioners.

Alfred A. Wheat, Sp. Asst. Atty. Gen., and Blackburn Esterline, Asst. Sol. Gen., of Washington, D. C., for the United States.

Charles F. Taplin, of Cleveland, Ohio, for intervening defendant coal companies.

Before WOOLLEY, Circuit Judge, and GIBSON and SCHOONMAKER, District Judges.

WOOLLEY, Circuit Judge (after stating the facts as above). Seven coal operators located on the line of the Pittsburgh & West Virginia Railway Company in Pennsylvania and West Virginia severally instituted proceedings before the Interstate Commerce Commission seeking reparation for damages which they had sustained, as they alleged, through that company's preferential practices in the distribution of empty coal cars, for use in interstate commerce, during two periods, one prior to the taking over of the railroads by the government and the other subsequent thereto.

The mines alleged to have been favored are those of the Pittsburgh Terminal Railroad & Coal Company, located in the Pittsburgh District on the line of the West Side Belt Railroad Company. The Pittsburgh & West Virginia Railway Company owns all the capital stock of the Pittsburgh Terminal Railroad & Coal Company, and the latter, in turn, owns 98 per cent. of the capital stock of the West Side Belt Railroad Company. The Commission regarded the situation as one in which a carrier unlawfully preferred its own mines to the detriment of others, and, accordingly, awarded reparation to the operators named in the caption.

Before suits could be brought the Pittsburgh & West Virginia Railway Company and James C. Davis, Director General of Railroads, filed this petition in the District Court praying that the respondent coal operators be restrained from enforcing the Commission's order of reparation until the final determination of this cause and that upon final determination a decree be entered annulling the Commission's order and perpetually enjoining the respondents from attempting to enforce it. The petition came on for hearing upon two motions; one by the petitioners for equitable relief by preliminary injunction and the other by the respondents to dismiss the bill for want of equity. As the two motions raise one question in common—whether the petition shows equity—we shall consider them together.

[1] The award was made under section 16 of the Interstate Commerce Act of February 4, 1887 (24 Stat. 379), as amended by section 13 of the Act of June 18, 1910 (36 Stat. 539 [Comp. St. § 8584]). The petitioners aver that the award is void for several reasons:

(1) Because it is based on the Commission's erroneous legal assumption that it can hold one carrier liable for prejudice growing out of the acts of another carrier.

This, being a mixed question of law and fact, is triable in the court of law and does not, alone, entitle the petitioners to equitable relief.

(2) Because the Commission's conclusions, both on the fact and extent of undue prejudice, were arrived at by following a legally erroneous method of computation by using the "idle hours."

So, also, this question, if a valid one, may be raised, controverted and decided in an action at law and does not, of itself, give the petitioners a standing in a court of equity.

(3) Because the order is not supported by evidence and is contrary to the evidence.

These, too, are questions of fact triable in a court of law. This is particularly true on this record since the petition discloses none of the evidence that was before the Commission.

(4) Because the order is arbitrary.

This is a conclusion; it is not supported by any facts averred in the petition. More-

over, the order, being an order for reparation, not an administrative order, may be attacked in an action at law.

[2] On none of these grounds for avoidance of the Commission's order, as pleaded, can the general equity jurisdiction of the District Court be invoked. For their adjudication the law supplies a complete, practicable and adequate remedy. Boise, etc., Co. v. Boise City, 213 U. S. 276, 281, 29 S. Ct. 426, 53 L. Ed. 796. We have, therefore, searched the petition for the ground for equitable relief on which the motion for preliminary injunction is based. That the petitioners cannot prevail unless their petition shows a cause in equity is not, of course, open to question. And so the petitioners point out that they invoke the general equity jurisdiction of this court (as distinguished from its statutory jurisdiction with respect to matters arising before the Interstate Commerce Commission) on the ground that the order, being void for the several reasons named, will, unless enjoined, set aside and· annulled, result in a multiplicity of suits against them. The petitioners concede this to be the only equitable ground shown and relied upon. It follows therefore that the determination of this one matter is preliminary to, and may be dispositive of, all others.·

Turning to the opinion of the Interstate Commerce Commission accompanying its award of reparation, it appears that not only did the West Virginia Company have complete stock control over the West Side Belt—a matter not particularly relied upon—but that the railroad properties of the West Virginia Company and West Side Belt, before, as well as during, the period of federal control, were operated under a common management. The directors and officials of both companies were practically identical. The separately owned equipment, motive power and other property of each company, together with its employés, were used jointly and interchangeably as efficiency and convenience might require, appropriate charges and credits being made in the accounts. Generally speaking, only the corporate and financial affairs of the two companies were kept separate and distinct. A pertinent fact in connection with this unified operation of the two properties was that their separate incorporation did not stand in the way of free distribution of equipment. "It was their policy at all times so to distribute equipment as to keep all of the mines on both roads in operation an equal number of hours per day, so far as was rea-

sonably practicable under all the circumstances and conditions." The Commission found from the evidence that during the period preceding the trouble the two roads were operated as one and in the matter of car distribution they were so regarded and treated not only by their own officials but by their connections, and by the car pool which was formed to control the distribution of cars during the war emergency.

In 1918, when (the war being on) demand for coal greatly increased, the West Virginia Company, while not yielding its operative control over the two roads, discontinued its standing practice of common car distribution and, maintaining that the two companies were separate entities, annulled the unification of car receipts and car distribution theretofore practiced, and thereafter limited car distribution to mines located on the two roads to the cars which were received on them respectively. As more cars came to the West Side Belt than to the West Virginia Company and as the mines in which the West Virginia Company was interested were located on the West Side Belt, the Commission held that the West Virginia Company thereby preferred its own mines in car distribution to the exclusion and prejudice of mines of others located on the line of the West Virginia Company. The West Virginia Company admitted the fact as to what it did but denied liability to the coal operators who suffered therefrom. In number these operators are about a dozen and, in consequence of its action, the West Virginia Company is liable to suits that may be instituted by them, either jointly or separately as, under the act, they may determine. These are the suits which the petitioners seek to avoid by invoking the equitable relief of this court.·

Admittedly, their right so to avoid these suits by resort to equity is not based on the *character* of the suits. In character an action of this kind is for damages based on the tort of preferential car distribution. It is not brought on the reparation award of the Interstate Commerce Commission. Mills v. Lehigh Valley R. Co., 238 U. S. 473, 35 S. Ct. 888, 59 L. Ed. 1414. An order of the Commission awarding reparation is not a cause of action. Nor is it in the nature of a judgment on which execution may issue. It is an award of money damages and is declared by statute to be evidence, and then only prima facie evidence, of the facts found by the Commission (section 16 of the Interstate Commerce Act of February 4, 1887 (24 Stat. 379), as amended by section 13 of

the Act of June 18, 1910 (36 Stat. 539, [Comp. St. § 8584]), to be used only as such in an action which may be instituted after default by a carrier to obey the order of payment. The provision in section 16 of the Act that, "the findings and order of the Commission shall be prima facie evidence of the facts therein stated" has been held by the Supreme Court only to establish a rebuttable presumption. "It cuts off no defense, interposes no obstacle to a full contestation of all the issues, and takes no question of fact from either court or jury. At most, therefore, it is merely a rule of evidence. It does not abridge the right of trial by jury or take away any of its incidents. Nor does it in any wise work a denial of due process of law." Meeker v. Lehigh Valley R. Co., 236 U. S. 412, 35 S. Ct. 328, 59 L. Ed. 659; Hillsdale C. & C. Co. v. Pennsylvania R. Co. (D. C.) 237 F. 272; Minds v. Pennsylvania R. Co. (D. C.) 237 F. 267; Id. (C. C. A.) 244 F. 53; Pennsylvania R. Co. v. Minds, 250 U. S. 368, 39 S. Ct. 531, 63 L. Ed. 1039; Pennsylvania R. Co. v. Weber (C. C. A.) 269 F. 111; Id., 257 U. S. 85, 42 S. Ct. 18, 66 L. Ed. 141; Mills v. Lehigh Valley R. Co., 238 U. S. 473, 482, 35 S. Ct. 888, 59 L. Ed. 1414.

Having full and adequate opportunity at law to present all its defenses in a single suit brought after an award of reparation has been granted, the petitioners have the same adequate opportunity to make full defense in the several suits covered by the order in question without assistance from a court of equity. The petitioner's right of resort to a court of equity therefore is reduced to the question whether they should be protected from the *number* of suits arising thereunder, and thereafter should be permitted to try in a court of equity matters properly triable in a court of law.

A party liable in more than one action at law is not in every instance entitled to equitable relief on the ground of avoiding multiplicity of suits. Multiplicity and multitude are not synonmous words. There must be in the situation something more than mere number of suits. "A court of equity ought not to interfere * * * unless it is clearly necessary to protect the plaintiff from continued and vexatious litigation." Boise, etc., Co. v. Boise City, 213 U. S. 276, 286, 29 S. Ct. 426, 430, 53 L. Ed. 796; 10 R. C. L. 281–288.

We cannot see how the petitioners in this case are threatened with vexatious litigation, or with litigation in any amount except that to which they have subjected themselves.

This is not an instance where one party who has many causes of action against another sues or threatens to sue on them by separate actions, when he could sue on all of them in one action, but it is a case where a number of unrelated parties claim to have been separately injured, and, therefore, have separate causes of action, though they arose from one alleged unlawful practice. Doubtless, they propose to bring actions on their grievances, separately or together, as the statute expressly permits them to do. As the statute definitely gives an action at law to every one so aggrieved, and also gives him the right to sustain such action by evidence of a reparation award, these rights cannot be defeated by the mere circumstance that other persons have like grievances and, similarly, propose to institute like actions for their redress. The granting of the equitable relief asked for in the instant case on the ground of avoiding multiplicity of suits would, in effect, put a stop to all actions that may be brought under authority of the statute and annul the rule of evidence with reference to reparation awards afforded by section 16 of the Act, and would compel the injured parties to try out in a court of equity matters properly triable in a court of law and would also compel them to forego the advantage of evidence which the statute gives them.

We are of opinion that the petition fails to disclose equity, and that, accordingly, it must be dismissed.