## MILLS, AS SURVIVING PARTNER OF NAYLOR & COMPANY, *v.* LEHIGH VALLEY RAILROAD COMPANY.

ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE THIRD
CIRCUIT

No. 631.   Argued May 11, 1915.—Decided June 21, 1915.

In a suit under § 16 of the Act to Regulate Commerce, a report of the Interstate Commerce Commission finding that the rate complained of was unreasonable, and awarding specified amount for reparation, is *prima facie* evidence of the damages sustained although the evidential or primary facts are not set forth. *Meeker & Co.* v. *Lehigh Valley R. R.*, 236 U. S. 412; *id.* 434.

Where the Interstate Commerce Commission makes an award to a

shipper complaining of unreasonable and discriminatory rates, as reparation, it expresses such decision as a matter of ultimate fact, and under the provisions of the Act to Regulate Commerce the form of expression is not confined to a particular formula.

The Act to Regulate Commerce does not allow any attorney's fee for reparation proceeding before the Commission, but only allows such a fee in an action in the courts based on the reparation award. *Meeker & Co.* v. *Lehigh Valley R. R.*, 236 U. S. 432.

THE facts, which involve claims of shippers against the carriers for unreasonable and discriminatory rates, are stated in the opinion.

*Mr. V. F. Gable* and *Mr. Arthur R. Thompson*, with whom *Mr. Frank Van Sant* was on the brief, for plaintiff in error:

The report and order of the Commission awarding reparation discloses sufficient findings of fact on which the award is based.

The measure of damages is proper.

The Commission's report on rehearing is based on report of original hearing.

There was no error in the trial court, but the Circuit Court of Appeals erred. *Allen* v. *C., M. & St. P. Ry.*, 16 I. C. C. 293; *Baer Bros.* v. *Denver & R. G. R. R.*, 233 U. S. 479; *Burton* v. *Driggs*, 87 U. S. 125; *Burr* v. *Des Moines*, 1 Wall. 99; *Cassell* v. *B. & O. Ry.*, 8 I. C. C. 333; *Commercial Club of Omaha* v. *C. & N. Ry.*, 7 I. C. C. 386; *Hathaway* v. *Cambridge Nat'l Bank*, 134 U. S. 494; *Int. Com. Comm.* v. *Louis. &. Nash. R. R.*, 227 U. S. 88, 91; *Louis. & Nash. R. R.* v. *Behlmer*, 175 U. S. 648; *Lehigh Valley Ry.* v. *Clark*, 207 Fed. Rep. 717; *Lehigh Valley Ry.* v. *Meeker*, 211 Fed. Rep. 785; *Logan* v. *Davis*, 233 U. S. 613; *McClure* v. *United States*, 116 U. S. 145; *Meeker* v. *Lehigh Valley Ry.*, 236 U. S. 412; *Mitchell Coal Co.* v. *Penna. R. R.*, 230 U. S. 247; *Naylor & Co.* v. *Lehigh Valley Ry.*, 15 I. C. C. 9; *New Haven R. R.* v. *Int. Com.*

*Comm.,* 200 U. S. 361; *Penna. Ry.* v. *International Coal Co.,* 230 U. S. 184; *Parsons* v. *C. & N. Ry.,* 167 U. S. 447; *Louis. & Nash. R. R.* v. *Dickerson,* 191 Fed. Rep. 705; *Perry* v. *F., L. & Cen. Penn. Ry.,* 5 I. C. C. 97; *Riverside Mills* v. *Atlantic Coast Line,* 168 Fed. Rep. 989; *Seaboard Air Line* v. *Seegers,* 207 U. S. 73; *Slocum* v. *N. Y. Life Ins. Co.,* 228 U. S. 364; *Southern Ry.* v. *Tift,* 206 U. S. 428; *Stone* v. *United States,* 164 U. S. 380; *Tex. & Pac. Ry.* v. *Abilene Cotton Co.,* 204 U. S. 426; *Un. Pac. Ry.* v. *United States,* 116 U. S. 154; *United States* v. *Balt. & Ohio Ry.,* 226 U. S. 14, 20; *United States* v. *Pugh,* 99 U. S. 265; *United States* v. *N. Y. Indians,* 173 U. S. 464; *United States* v. *Hill,* 120 U. S. 169; *Wright* v. *United States,* 105 U. S. 381.

*Mr. Henry S. Drinker, Jr.,* with whom *Mr. Edgar H. Boles, Mr. John G. Johnson* and *Mr. Samuel Dickson* were on the brief, for defendants in error.

Mr. Justice Hughes delivered the opinion of the court.

During the years 1906 and 1907, Naylor & Company—a firm of which the plaintiff in error is surviving partner—were shippers of pyrites cinder over the lines of the defendants in error from Buffalo, New York, to points in Pennsylvania and New Jersey. The published rate was $2 per gross ton. On April 4, 1908, these shippers filed a complaint with the Interstate Commerce Commission, alleging that the rate was 'excessive,' 'unreasonable' and 'unjustly discriminatory.' They asked that the railroad companies be ordered to desist from exacting the rate, that a lower rate be fixed, and that reparation be granted. The defendants answered and, after hearing, the Commission made its report on January 5, 1909, holding 'that the rate on pyrites cinder should not exceed the rate on iron ore from Buffalo.' The rate on iron ore was $1.45 per

ton to points of destination to which there was a rate of $2 on pyrites cinder. Reparation was refused. *Naylor & Company* v. *Lehigh Valley Railroad Company,* 15 I. C. C. 9. Order was made accordingly.

On May 8, 1909, Naylor & Company filed with the Interstate Commerce Commission a motion for a rehearing on the question of reparation alone, and the motion was granted. Additional evidence was taken and various sums were awarded by the Commission against the respective companies as reparation on shipments made within the period of limitation. The order was made on June 2, 1910.

In May, 1911, this suit was brought, pursuant to § 16 of the Act to Regulate Commerce, in the Circuit Court of the United States for the Eastern District of Pennsylvania to recover the several amounts of money set forth 'as and for damages and reparation' in accordance with the Commission's order. Issue was joined by a plea of not guilty. Upon the trial, the two reports and orders of the Interstate Commerce Commission, above mentioned, were received in evidence over objection. There was testimony that the amounts awarded had not been paid. That constituted the case for the plaintiffs, and the defendants offered no evidence. A request by the defendants for 'binding instructions' in their favor was refused. The case was submitted to the jury with the instruction, in substance, that the finding of the Commission was *prima facie* evidence of the facts and that it was for the jury to say whether the plaintiffs were entitled to recover the amount of money claimed. A verdict was returned for the plaintiffs in specified amounts which appear to be the same as those awarded by the Commission with interest to date. The defendants then moved for judgment *non obstante veredicto.* The motion was dismissed and judgment ordered for the plaintiffs on October 30, 1912. At the same time, the trial court allowed to the counsel for the plaintiffs a fee of $1,000 for their services in the proceedings

before the Interstate Commerce Commission and a further fee of like amount for their services in this suit; and to this allowance the defendants excepted. Exceptions having also been taken to the refusal of the request of the court to direct a verdict for the defendants, to the instruction given, and to the dismissal of the motion for judgment *non obstante veredicto,* proceedings in error were had before the Circuit Court of Appeals, where the judgment was reversed, without directing a new trial. *Lehigh Valley R. R.* v. *Clark,* 207 Fed. Rep. 717. And to review the judgment, this writ of error has been prosecuted.

The grounds of the ruling of the court below are: first, that there were no sufficient findings of fact in the reports of the Commission, as required by the statute; and, second, that the plaintiffs had failed to present any evidence which made out a *prima facie* case of damage sustained. That is, it is said that if the statements in the first report of the Commission could be regarded as findings of fact within the meaning of the statute so as to make them *prima facie* evidence of the facts found, they were not sufficient to support the plaintiffs' claim; and that there were no facts found in the second report which entitled the plaintiffs to go to the jury.

The fundamental question thus presented, with respect to the effect of the Commission's reports and orders, has recently been determined in *Meeker & Co.* v. *Lehigh Valley R. R. Co.,* 236 U. S. 412, and, in the light of the conclusion there reached, little need now be said. In dealing with the objection that the reports and orders of the Commission then before the court did not contain any findings of fact, or at least not enough to sustain an award of damages, it was held that the statute does not require a statement of the evidential or primary facts. The court said: "We think this is not the right view of the statute and that what it requires is a finding of the ultimate facts—a finding which, as applied to the present case, would dis-

close (1) the relation of the parties as shipper and carrier in interstate commerce; (2) the character and amount of the traffic out of which the claims arose; (3) the rates paid by the shipper for the service rendered and whether they were according to the established tariff; (4) whether and in what way unjust discrimination was practiced against the shipper . . ; (5) whether, if there was unjust discrimination, the shipper was injured thereby, and, if so, the amount of his damages; (6) whether the rate collected from the shipper . . . was excessive and unreasonable and, if so, what would have been a reasonable rate for the service; and (7) whether, if the rate was excessive and unreasonable, the shipper was injured thereby, and if so, the amount of his damages."

In the case now under consideration, the first report of the Commission was concerned only with the rates which should be charged. No reparation was allowed and no findings whatever were made as to damages.

The second report is as follows:

"In the report made by this Commission following an inquiry into the reasonableness of the rate of $2 per gross ton exacted by the defendants for the transportation of pyrites cinder from Buffalo, N. Y., to points in the States of Pennsylvania and New Jersey the rate was found excessive, and the defendants were ordered to establish a rate not to exceed that contemporaneously applying on shipments of iron ore between the same points. Reparation was denied. *Naylor & Co.* v. *L. V. R. R. Co.*, 15 I. C. C. 9.

"Pursuant to the Commission's order the defendants reduced the rate on pyrites cinder to $1.45, the rate on iron ore. The complainant thereupon filed a motion for rehearing upon the question of reparation, and after consideration by the Commission the motion was granted. Additional evidence was taken and the parties were heard in oral argument.

"We now find that the rate of $2 per gross ton, assessed and collected by the defendants on the shipments giving rise to complaint, was unjust and unreasonable to the extent that it exceeded the subsequently established rate of $1.45 per gross ton. Complainant is entitled to reparation on all shipments moving within the period of the statute of limitations. *Detroit Chemical Works* v. *N. C. Ry. Co.*, 13 I. C. C. Rep. 357; *Same* v. *Erie R. R. Co.*, 13 I. C. C. Rep. 363.

"The Buffalo, Rochester & Pittsburg Railway Company and the Philadelphia & Reading Railway Company will be required to refund to the complainant $2,846.55, with interest from November 21, 1907, as reparation for the collection of unreasonable charges on 189 carloads of pyrites cinder aggregating 5,175–1590/2240 tons in weight moving from Buffalo to various Pennsylvania points.

"The New York Central & Hudson River Railroad Company and the Philadelphia & Reading Railway Company will be required to refund to the complainant $248.93, with interest from April 19, 1907, as reparation for the collection of unreasonable charges on 13 carloads of pyrites cinder aggregating 452–1370/2240 tons in weight, moving from Buffalo to various Pennsylvania points.

"The Delaware, Lackawanna & Western Railroad Company and the Central Railroad Company of New Jersey will be required to refund to the complainant $487.52, with interest from September 23, 1907, as reparation for the collection of unreasonable charges on 31 carloads of pyrites cinder aggregating 886–960/2240 tons in weight, moving from Buffalo to Newark, N. J.

"The Lehigh Valley Railroad Company and the Central Railroad Company of New Jersey will be required to refund to the complainant $1,024.15, with interest from November 13, 1907, as reparation for the collection of unreasonable charges on 74 carloads of pyrites cinder

aggregating 1,862–220/2240 tons in weight, moving from Buffalo to various Pennsylvania and New Jersey points.

"The Lehigh Valley Railroad Company and the Philadelphia & Reading Railway Company will be required to refund to the complainant $2,362.23, with interest from November 13, 1907, as reparation for the collection of unreasonable charges on 172 carloads of pyrites cinder aggregating 4,295–20/2240 tons in weight, moving from Buffalo to various Pennsylvania and New Jersey points.

"It will be ordered accordingly."

This report, it will be observed, shows the relation of the parties as shipper and carrier in interstate commerce; the general character of the traffic involved and the amount of the shipment with respect to which reparation was claimed; the determination that the rate exacted (which was specified) was unjust and unreasonable to the extent that it exceeded the established rate (also specified); and, further, the determination that the companies respectively should pay a stated amount 'as reparation for the collection of unreasonable charges' on the quantities mentioned. It is at once apparent that these findings meet the test laid down in the *Meeker Case*, unless it can be said that they were insufficient as to the amount of damages suffered. Thus, there would seem to be no room for question that the finding that the rate charged was unreasonable is a sufficient finding. The Commission stated: "We now find that the rate of $2 per gross ton, assessed and collected by the defendants on the shipments giving rise to complaint, was unjust and unreasonable to the extent that it exceeded the subsequently established rate of $1.45 per gross ton." It is insisted that, in view of the provisions of the first order, and the Commission's description of it in the second report, the essential basis of the ruling was not the inherent reasonableness of the rate established but its relation to the rate on a competitive commodity. We think, however, that the specific

finding in the second report that the rate exacted 'was unjust and unreasonable' to the extent specified, was a finding as to the ultimate fact of unreasonableness which should be taken precisely as made. The finding in this respect is substantially the same as that in the second *Meeker Case* (236 U. S. 434, 435, 436).

As to the amount of damage sustained, there would be no question if the Commission had found, as in the case last cited, that the shipper 'was damaged' to the amount mentioned. The distinction attempted to be drawn is that in the case referred to there was a statement that the shipper 'was damaged' while in the present case the Commission held that he was entitled to the stated amount 'as reparation.' In both cases, the amount actually allowed was the difference between the amount charged and that which would have been payable at the rate sanctioned. The difference between the findings in the two cases, we think, is merely in the form of words used.

When the Commission made the award 'as reparation' they undoubtedly expressed the decision, as a matter of ultimate fact, that there was injury to this extent to be repaired. No other intelligent construction can be put upon their statement. If, as was held in the second *Meeker Case*, a finding of the amount of damage as a finding of ultimate fact is sufficient, the expression of that finding is not confined to a particular formula. What the Commission decided was that the shippers were entitled to reparation, that is, to be made whole, to be compensated for a loss because of an illegal and unreasonable exaction, and the amount which they stated as the sum to be paid 'as reparation' on the specified shipments was the amount which they found necessary to accomplish the reparation,—to afford the compensation. The statute was not concerned with mere forms of expression and in view of the decision that a finding of the ultimate fact of the amount of damage is enough to give the order of the

Commission effect as *prima facie* evidence, we think that the trial court did not err in its ruling. The statutory provision merely established a rule of evidence. It leaves every opportunity to the defendant to contest the claim. But when the Commission has found that there was damage to a specified extent, *prima facie* the damage is shown; and, according to the fair import of its decision, the Commission did find the amount of damage in this case.

There was error, however, in the allowance of the fee for services before the Commission. 236 U. S. 432, 433.

The judgment of the Circuit Court of Appeals is reversed and that of the District Court is modified by striking out the allowance of $1,000 as attorney's fee for services before the Commission, and is affirmed as so modified.

*It is so ordered.*