MELLON, Agent, v. WORLD PUB. CO.
SAME v. TULSA PAPER CO. SAME v.
DEMOCRAT PRINTING CO.

Circuit Court of Appeals, Eighth Circuit.
June 10, 1927.

Nos. 7593–7595.

**1. Commerce ⚖️88—Orders and report of Interstate Commerce Commission held finding that rates were unreasonable per se, notwithstanding use of language "relatively unjust and unreasonable" (Federal Control Act, § 10 [Comp. St. § 3115¾j]).**

Orders and report of Interstate Commerce Commission held in effect finding that particular rates were unjust and unreasonable per se as affects right to reparations, notwithstanding Commission used the language "relatively unjust and unreasonable," particularly in view of fact that proceedings were brought under Federal Control Act, § 10 (Comp. St. § 3115¾j), giving Commission power to act only when rates challenged were unreasonable and unjust, and by it found to be so.

**2. Commerce ⚖️88—Interstate Commerce Commission's finding of unreasonableness per se of rates held sufficient basis for award of damages without specific finding of maximum reasonable rates.**

Interstate Commerce Commission's finding of unreasonableness of rates per se held to contain a sufficient formula fixing maximum rates, and not insufficient to support reparation order for want of specific finding as to maximum reasonable rates.

**3. Commerce ⚖️88—In action for reparations, report and orders of commission and stipulation as to shipments held to make prima facie case for plaintiffs.**

In consolidated actions by shippers to recover amounts awarded them by Interstate Commerce Commission as damages for exaction of unreasonable rates, report and orders of Commission making award, together with stipu-

lation that all shipments were made on joint through rates, held to make prima facie case for each plaintiff.

**4. Evidence ⚖️215(1), 265(2)—Statements prepared pursuant to Interstate Commerce Commission rule by complainants in proceeding to recover unreasonable rates, held admissions sufficient to support recovery on reparation order (Federal Control Act, § 10 [Comp. St. § 3115¾j]; Act to Regulate Commerce, § 16 [Comp. St. § 8584]; Interstate Commerce Commission rule V).**

Statements prepared pursuant to Interstate Commerce Commission rule V by complainants in proceeding under Federal Control Act, § 10 (Comp. St. § 3115¾j), to recover on account of exaction of unreasonable rates, showing details of shipments certified as correct by delivering carrier, held admissions of amounts recoverable as damages, and sufficient evidence to support recovery, in action under Act to Regulate Commerce, § 16 (Comp. St. § 8584), to enforce reparation order.

**5. Railroads ⚖️5½(4)—That shipment passed over lines not under federal control or originated in Canada held not to defeat reparation for unreasonable rates (Federal Control Act, § 10 [Comp. St. § 3115¾j]).**

In action against Director General to enforce reparation order, entered in proceedings under Federal Control Act, § 10 (Comp. St. § 3115¾j), to recover for exaction of unreasonable rates, fact that certain shipments passed part way en route over a line or lines not then under federal control, and fact that certain other shipments originated in Canada, held not to prevent recovery, where in each instance the whole charge was exacted by and paid to the delivering carrier, which was under federal control.

**6. Railroads ⚖️5½(19)—Plaintiffs, in action against Director General for reparations held entitled to attorney's fees, claim not being penalty (Act to Regulate Commerce, § 16 [Comp. St. § 8584]; Federal Control Act, § 10 [Comp. St. § 3115¾j]).**

In action against Director General under Act to Regulate Commerce, § 16 (Comp. St. § 8584), to enforce reparation order entered in proceeding under Federal Control Act, § 10 (Comp. St. § 3115¾j), plaintiffs held entitled to reasonable attorney's fees provided for in section 16, as against claim that allowance thereof was in nature of penalty, not recoverable against United States.

**7. Railroads ⚖️5½(19)—Plaintiffs in action against Director General for reparations held entitled to attorney's fees as costs, irrespective of pleading (Act to Regulate Commerce, § 16 [Comp. St. § 8584], Federal Control Act, § 10 [Comp. St. § 3115¾j]).**

In action against Director General under Act to Regulate Commerce, § 16 (Comp. St. § 8584), to enforce reparation order under Federal Control Act, § 10 (Comp. St. § 3115¾j), plaintiffs held entitled to recover reasonable attorney's fees allowed by section 16, though demand therefor was not incorporated in complaint until after year within which action was required to be brought; such attorney's fees being no part of plaintiff's cause of action, but rather part of costs allowable as such.

In Error to the District Court of the United States for the Northern District of Oklahoma; Franklin E. Kennamer, Judge.

Separate actions by the World Publishing Company, by the Tulsa Paper Company, and by the Democrat Printing Company against James C. Davis, wherein Andrew W. Mellon, Agent, was substituted defendant. Judgments for plaintiffs in each case (16 F. [2d] 130), and defendant brings error. Affirmed.

Alex. M. Bull, of Washington, D. C. (Sidney F. Andrews, of Washington, D. C., E. J. Doerner, of Tulsa, Okl., and Stuart, Cruce & Franklin, of Oklahoma City, Okl., on the brief), for plaintiff in error.

Thomas F. Shea, of Tulsa, Okl., and Karl Knox Gartner, of Washington, D. C. (John J. Shea, of Tulsa, Okl., on the brief), for defendants in error.

Before LEWIS and VAN VALKENBURGH, Circuit Judges, and PHILLIPS, District Judge.

LEWIS, Circuit Judge. In each of these cases defendant in error recovered judgment on a reparation order of the Interstate Commerce Commission. They filed with the Commission in October, 1918, their complaint against the Director General of Railroads and certain railway companies, in which they charged that they had been and were being subjected to payment of unjust and unreasonable rates, in violation of section 10 of the Federal Control Act (40 Stat. 451 [Comp. St. § 3115¾j]), on news-print, wrapping and toilet paper shipped from Minnesota and Wisconsin points and consigned to them at Tulsa, Oklahoma. The shipments were all made on joint through rates, some of them prior to but most of them during Federal control. They asked for an order commanding respondents to cease and desist from further violation of said section 10, that the Commission establish and put in force maximum rates for the future and for an order of reparation on shipments that had moved within two years prior to the complaint and those that might be made up to the effective date of new rates to be found reasonable and just. The complaint named the distances from points of origin to Kansas City and Joplin, Missouri, and to Tulsa, Oklahoma, and the rates to each destination, and on like shipments to Muskogee, Oklahoma. It referred to rates to Muskogee fixed by the Commission in Dockets 6543 and 6544, 31 Interst. Com. Com'n R. 289, 347, and claimed that Muskogee and Tulsa should have

the same rate. The Commission's report is found in 53 Interst. Com. Com'n R. 491; and after proof taken the Commission entered its order June 16, 1919, that defendants—

"cease and desist on or before October 21, 1919, and thereafter to abstain from publishing, demanding or collecting for the transportation of news-print paper from Merrill and Park Falls, Wis., and International Falls, Minn., and wrapping paper from Nekoosa, Wis., and toilet paper from Green Bay, Wis., in carloads to Tulsa, Okl., rates which exceed on a ton-mile basis the rates on like traffic contemporaneously maintained to Joplin, Mo."

It further ordered that defendants on or before October 21, 1919, upon the required notice, establish, maintain and apply to transportation of said commodities from said points of origin to Tulsa, Okl., "rates which shall not exceed on a ton-mile basis the rates on like traffic contemporaneously maintained to Joplin, Mo." In its report the Commission found:

"Upon consideration of the facts of record and of all the exceptions taken we adopt, as our own, the report of the examiner; and we find that the rates to Tulsa assailed were, are, and for the future will be relatively unjust and unreasonable to the extent that they exceeded, exceed, and may exceed on a ton-mile basis the rates on like commodities contemporaneously maintained to Joplin. * * *

"We further find that complainants made shipments and paid and bore the freight charges thereon at the rates found relatively unjust and unreasonable; that they have been damaged to the extent of the difference between the charges so paid and those which would have accrued at the rates herein found just and reasonable; and that they are therefore entitled to reparation from the defendants, with interest. Complainants should prepare statements showing details of the shipments in accordance with rule V of the Rules of Practice, also specifying the dates upon which the charges were paid, which statements should be submitted to the defendants for verification. Upon receipt of such statements so prepared and verified, we will consider the entry of an order awarding reparation."

A reparation order was entered on November 8, 1920:

"It appearing, that on June 16, 1919, the Commission entered its report and order in the above-entitled proceedings, which are hereby referred to and made a part hereof, and this proceeding now coming on for further consideration on the question of repara-

tion, and the parties having filed agreed statements with respect to the shipments in question; we find that complainants named below are entitled to awards of reparation from the defendants named in the following table in the amounts set opposite their respective names, with interest:

| Complain-ants. | Defendants. | With Interest | |
| --- | --- | --- | --- |
| | | Amounts | From |
| Tulsa Paper Company | John Barton Payne, Director General of Railroads, as Agent | $1,335.44 | October 1 1918 |
| Democrat Printing Company | John Barton Payne, Director General of Railroads, as Agent | 4,444.08 | September 10, 1918 |
| World Publishing Company | John Barton Payne, Director General of Railroads, as Agent | 5,876.89 | November 25, 1918 |

(We omit the awards against the railroad companies for shipments prior to Federal control. They were all paid.)

"It is therefore ordered, that the defendants named in each of the groups shown in the above table be, and they are hereby, authorized and directed to pay unto complainants shown opposite said groups, on or before December 30, 1920, the amount set opposite the respective groups in said tables, with interest thereon at the rate of six per cent. per annum from the dates therein set forth, as reparation on account of unreasonable rates exacted for the transportation of news-print paper from Merrill and Park Falls, Wis., and International Falls, Minn., and wrapping paper from Nekoosa, Wis., and toilet paper from Green Bay, Wis., to Tulsa, Okl. Permission is hereby given to any other carriers which may have participated in the transportation of the shipments herein involved to join in the payment of the reparation above awarded on shipments which moved via their lines."

On November 7, 1921, defendants in error brought these actions in the state court against James C. Davis, Agent (later by agreement plaintiff in error was substituted), to recover the amounts awarded to them as damages by the Commission, and attached to the complaints as part thereof the Commission's orders of June 16, 1919, and November 8, 1920. Summons was issued on the same day the complaints were filed. The complaints stated the proceedings before the Commission and its findings and orders, named the railroads that participated in the shipments, alleged that they were operated and controlled by the Government under the Director General of Railroads from December 29, 1917, until March 1, 1920, that during

that time numerous carloads were shipped to plaintiffs over the roads named and received by them at Tulsa, Okl., that the Interstate Commerce Commission, after full hearing, had held that the charges paid on said shipments by plaintiffs were unjust and unreasonable and in violation of section 10 of the Federal Control Act, that it had ordered the defendants to cease and desist on or before October 21, 1919, and thereafter, to abstain from demanding or collecting rates which exceeded on a ton-mile basis the rates on like traffic contemporaneously maintained to Joplin, Mo., that pursuant to said order the Director General published rates which did not exceed on a ton-mile basis the rates on like traffic to Joplin, Mo., that after the hearing before the Commission the plaintiffs prepared and filed with the Commission statements under rule V of the Rules of Practice, which statements were approved and verified as correct by defendant, and an order of reparation on all shipments was entered by the Commission finding the amount of damage that had accrued to plaintiffs respectively on account of the unjust and unreasonable charges which they had been required to pay to the Director General on said shipments. That part of section 206 of the Act providing for termination of Federal control (41 Stat. 456 [Comp. St. § 10071¼cc]) which authorized the institution of these actions was set out, and it was alleged that the President had designated James C. Davis as agent against whom these suits might be brought. Judgments were asked for the respective amounts paid to the Director General and named in the reparation order, with interest thereon at 6 per cent. and costs. Later the court, over objection, permitted each plaintiff to amend, by setting up a specific claim for reasonable attorney's fee. The defendant caused the three cases to be removed to the Federal Court and there filed his answer to each complaint. After continuances on written stipulations a jury was finally waived, trial was had and the court made general findings for plaintiffs and entered judgments for the amounts claimed with interest and costs, and directed that reasonable attorney's fees in each case be allowed and taxed as part of the costs against the defendant.

[1] We come to the errors relied on for reversal in each case. It is argued that the Commission did not find that the Tulsa rates were unjust and unreasonable per se, it only found them "relatively unjust and unreasonable," which was equivalent to a finding of undue prejudice or preference and no damage was proved, as required in such cases.

We cannot agree to that construction of the Commission's report and orders. If it had been the intention of the Commission to find the rates unduly prejudicial and preferential instead of unjust and unreasonable, it would have done so. The thought that the Commission intended by the language it used to make a finding of that kind cannot be.rationally entertained. It does violence to ordinary information on the subject dealt with, as well as to the expert knowledge of members of the Commission. Its report and orders are convincing that its inquiry and conclusions were directed to the question of the unreasonableness of the Tulsa rates, and its findings were restricted to that subject. Its reparation order was made "on account of the unreasonable rates exacted for the transportation." We quote from the report (53 Interst. Com. Com'n R. 491) parts thereof preceding the findings set out, supra, for the purpose of showing their basis, scope and purpose:

"Reparation is asked and the establishment of just and reasonable rates for the future. Only carload rates are dealt with and rates herein are stated in cents per 100 pounds. * * * It will be observed that the distances to Tulsa are in all instances within three miles of those to Muskogee and that as compared with Kansas City and Joplin the ton-mile earnings to Tulsa are materially higher, contrary to the general rule that such earnings should decrease as distance increases: The contention of complainants and interveners is that the rates to Tulsa should not exceed per ton-mile the rates to Kansas City, and reliance is placed upon Phœnix Printing Co. v. M. K. & T. Ry. Co., 31 Interst. Com: Com'n R. 289, and Adleta Paper Co. v. C. & N. W. Ry. Co., 31 Interst. Com. Com'n R. 347, hereinafter referred to as the Muskogee Cases, wherein upon complaints and facts substantially like those here considered, we prescribed rates on news-print paper and wrapping paper from 'northern mill points to Muskogee based upon the same rate per ton-mile as to Joplin. * * * The record discloses no material difference in traffic or transportation conditions between Oklahoma points of destination and as between Muskogee and Tulsa, lying, as they do, within the same immediate section of the state and practically the same distance from the points of origin, there appears to be no good reason for disparity in rates.

"Except for Tulsa's position across the invisible state line there is shown no transportation condition which would justify different rate treatment than that accorded Jop-

lin. If, as to this traffic, the latter holds a modicum of superiority it is that of shorter distance from the mills which would be given full effect in the application of equal ton-mile rates.

"In the absence of proof to the contrary the conclusion reached in the Muskogee Cases, supra, must be affirmed as sound, and at least equal ton-mile rates should be the maximum at Tulsa.

"Defendants apply equal rates on newsprint paper and wrapping paper from the mill points under consideration to Kansas City, Joplin, and Muskogee, and no reasons are advanced for a disparity in such rates in the case of Tulsa. * * *

"The conclusions proposed by the examiner were: That the rates to Tulsa assailed were and are relatively unjust and unreasonable to the extent that they exceeded and now exceed on a ton-mile basis the rates on like commodities contemporaneously maintained to Joplin; a basis which would give to Tulsa rates substantially equivalent to those to Muskogee and which should be held to have been and to be relatively just and reasonable; and that reparation should be awarded."

In Docket No. 14533, entitled Traffic Bureau, etc., v. Baltimore & Ohio Railroad et al., decided December 6, 1926, the Commission said:

"One of the best tests of the reasonableness of a rate is by comparison with the rates on like traffic in the same territory. The Interstate Commerce Act recognizes no distinction between relative unreasonableness and intrinsic or absolute unreasonableness."

Moreover, the Commission treated the complaint as seeking relief provided for in section 10 of the Federal Control Act, which gave it the power to act only when the rates are challenged as unreasonable and unjust and by it found to be so. The argument on this point rests on the word "relatively," used by the Commission in its finding that the rates to Tulsa were *relatively* unjust and unreasonable. When the context is considered the appropriateness of the expression and its plain purpose are obvious, as we will now attempt to show.

[2] It is further argued that even if the Commission's finding be construed as a finding of unreasonableness of rates per se, still no finding was made of maximum reasonable rates to Tulsa, hence there was no basis for the award of damages. It is true the Commission did not set out specifically reasonable rates to Tulsa in cents per 100 lbs., as it did in the Muskogee Cases, 31 Interst. Com. Com'n R. 289, 347. But in those cases

it took the Joplin rate as a guide under the circumstances to ascertain a just and reasonable rate to Muskogee. It said:

"No reason whatever appears in the record why the rate per ton-mile to Muskogee should be greater than the rate per ton-mile to Joplin, the general rule being that the rate per ton-mile should be slightly less for the longer distance."

So, in this case, it took the Joplin rate as a guide under the circumstances to ascertain a just and reasonable rate to Tulsa and directed that the Joplin rate, reduced to a ton-mile basis, be applied as the rate to Tulsa. The report gives the distances from points of origin to Joplin and to Tulsa. The Commission found that there were no conditions that would justify a different rate treatment for Tulsa than that accorded to Joplin, that there was no difference between the two points of destination for rate purposes, and the fact that Joplin was nearer the points of origin would be given full effect in the application of equal ton-mile rates. The purpose of the use of the word "relatively" is thus apparent. Under the facts the relation between Joplin and Tulsa was such, that unless Tulsa was placed on a ton-mile basis of rates to Joplin, the rates to Tulsa would be relatively unreasonable. On this point the District Judge said: "That a maximum rate for Tulsa on the commodities involved was announced by the Commission bears of little doubt. Instead of specific figures the finding set a formula." It is insisted by counsel for plaintiff in error that this is not so, because one factor in the formula was not made constant and invariable, that is, the Commission did not in its report and finding name the rate to Joplin. In its report it said:

"The relative basis per ton-mile can be applied to any rate contemporaneously maintained to Joplin; and need not be limited, as maxima, to those under the present rates to Joplin."

But it does not follow that the carriers could not and cannot, at any and all times, quickly and readily ascertain the rate to Tulsa on the ton-mile basis to Joplin, even though the rate to Joplin may have been changed during the reparation period, or for that matter thereafter; and it was the plain intention of the Commission to so provide. There was no intention, in fixing the maximum rate to Tulsa, to do so on the assumption that there had not been and would not be any change in the rate to Joplin. The purpose of the finding and orders was to the contrary, to fix and keep the rate to Tulsa on a ton-mile basis with the rate to Joplin; and

so it was found and ordered that the rate to Tulsa was, had been and would be unreasonable and unjust to defendants in error unless the Tulsa rates were, had been and should be kept on the same ton-mile basis as the contemporaneous rates to Joplin. We therefore think, as stated by the District Judge, that the Commission gave a simple formula which fixed the maximum rates to Tulsa and that this contention is without merit.

[3, 4] At the trial the plaintiffs below rested each case, the three being consolidated for trial, on the report and orders of the Commission, and a stipulation that all shipments were made on joint through rates. This made a prima facie case for each plaintiff. Mills v. Lehigh Valley R. R., 238 U. S. 473, 482, 35 S. Ct. 888, 59 L. Ed. 1414. The defendant then introduced the whole record and proceedings before the Commission, including the statements filed with the Commission under its rule V, and then asked the court to make many findings of fact and conclusions of law, among the latter that there was no evidence in support of the reparation order, all of which the court declined to make. Exceptions were saved and error is assigned. Defendants in error were directed to file the rule V statements as proof of the damages, and they did so, and the reparation order was based on them. They showed the commodity in each shipment, the car by number and initials, the weights, the points of origin and destination, the route over named carriers, the rates, the amounts charged and paid and to whom paid, and dates of payments, the amounts that should have been charged in accord with the reparation order, and the amounts claimed as reparation on each shipment. They were signed by the claimant, certified as correct by the delivering carrier and then filed with the Commission, and the Commission found in its reparation order that the parties had filed agreed statements with respect to the shipments in question. The rule V statements were admissions by the Director General of the amounts recoverable as damages, and we are not able to appreciate the contention now made that they were wholly insufficient as proof for that purpose. They did not tend to overthrow the prima facie cases. Their tendency was to support the Commission's order.

[5] It is further said that some of the shipments passed part way en route over a line or lines not then under Federal control, and as to these the Director General was not liable, at least to the extent of that part of the charges going to such line. But in each in-

stance the whole through charge was exacted by and paid to the delivering carrier, which was under Federal control, hence the Director General received all of those payments. Likewise as to a few shipments having points of origin over the American-Canadian line, shown in some of the rule V statements. Some contention is made about jurisdiction over the person of defendant. In two of the cases summons was returned as served on James C. Davis as Agent, and in all of them he appeared and filed answers without objection after they were removed to the Federal Court, and consented to trial without jury. [6, 7] The judgments provide that a reasonable attorney's fee will be taxed by the court upon notice to the defendant when the judgment shall have become final, and this is made a ground of objection. Section 10 of the Federal Control Act provides among other things:

"After full hearing the Commission may make such findings and orders as are authorized by the Act to Regulate Commerce as amended, and said findings and orders shall be enforced as provided in said Act."

Section 16 of the Act to Regulate Commerce provides that:

"A petition for the enforcement of an order for the payment of money shall be filed in the circuit or state court within one year from the date of the order, and not later." Comp. St. § 8584.

As already observed, each complaint was filed in the state court within the time so limited, but neither complaint specifically asked for the allowance of an attorney's fee, but after the year had expired each plaintiff below sought to amend his complaint, which was permitted by the court, by specifically asking that an attorney's fee be allowed. The objection now raised is twofold: (a) That the allowance of an attorney's fee would be in the nature of a penalty, not provided for by any statute and not recoverable against the United States; and (b) that the recovery of an attorney's fee was not sought until after the one year bar. The purpose and effect of the Acts of Congress providing for Federal control and operation of railroads, and particularly section 10 of the Federal Control Act, are clearly and comprehensively stated in Missouri Pac. R. R. Co. v. Ault, 256 U. S. 554, 41 S. Ct. 593, 65 L. Ed. 1087. It is there said:

"The Government was to operate the carriers, but the usual immunity of the sovereign from legal liability was not to prevent the enforcement of liabilities ordinarily incident to the operation of carriers. The situation was analogous to that which would exist if there were a general receivership of each transportation system. * * * This purpose Congress accomplished by providing that 'carriers while under Federal control' should remain subject to all then existing laws and liabilities and that they might sue and be sued as theretofore. Here the term 'carriers' was used as it is understood in common speech; meaning the transportation systems as distinguished from the corporations owning or operating them. * * * It is this conception of a transportation system as an entity which dominates section 10 of the Act. The systems are regarded much as ships are regarded in admiralty. They are dealt with as active responsible parties answerable for their own wrongs. * * * If the cause of action arose while the Government was operating the system the 'carrier while under Federal control' was nevertheless to be liable and suable. This means, as a matter of law, that * * * the Government undertook as carrier to observe all existing laws; it undertook to compensate any person injured through a departure by its agents or servants from their duty under such law."

It was held that there was no intention or purpose in any of the Acts to subject the Government to the recovery of fines, penalties and forfeitures, that its liability extended only to compensation, and where injury had been inflicted compensatory damages might be collected against the carrier while under Federal control, including interest and costs. Section 16 of the Act to Regulate Commerce says that if the petitioner shall finally prevail in his suit to enforce the reparation order of the Commission he shall be allowed a reasonable attorney's fee to be taxed and collected as part of the costs of the suit. It was contended by the carrier in Meeker & Co. v. Lehigh Valley R. R., 236 U. S. 412, 35 S. Ct. 328, 59 L. Ed. 644, that the attorney's fee allowed by this section was not enforceable because it was an imposition of a penalty on the carrier for failing to pay a debt. The contention was held unsound. The court in that case said that the purpose of the statute was to promote a closer observance by carriers of the duties imposed by the statute and to encourage payment without suit of just demands, which did not militate against its validity. Nor is it a part of the damage to the shipper, and thus an element in the cause of action itself. It is made a part of the costs and recoverable only as such. Not being a part of the cause of action, it need not be pleaded. It is not a subject on which issue can be joined. Its allowance is dependent on

a determination of the issues in plaintiff's favor. If the plaintiff prevail it shall be allowed to him and taxed as other costs are taxed. Not until plaintiff prevails does it become a subject of controversy. So we think neither objection well taken. We leave the amounts to be fixed for services in this court as well as in the trial court to the District Judge.

The judgment in each case is affirmed.