GENERAL MOTORS CORPORATION,
Plaintiff,

v.

UNITED STATES of America and Interstate Commerce Commission,
Defendants,

and

The New York Central Railroad Company et al., Intervening Defendants.

Civ. A. No. 21117.

United States District Court
E. D. Michigan, S. D.

Aug. 13, 1962.

Walter R. Frizzell, Aloysius F. Power, Detroit, Mich., for General Motors Corporation.

John H. D. Wigger, Attorney, Lee Loevinger, Asst. Atty. Gen., Department of Justice, Washington, D. C., for Attorney General.

Lawrence Gubow, U. S. Atty., Robert F. Ritzenhein, Asst. U. S. Atty., Detroit, Mich., for the United States.

Arthur J. Cerra, Assistant General Counsel, I.C.C., Robert W. Ginnane, General Counsel, Interstate Commerce Commission, Washington, D. C., for Interstate Commerce Commission.

Larry C. Carl, Detroit, Mich., J. Edgar McDonald, New York City, of counsel, for New York Central Railroad Company et al.

FREEMAN, District Judge.

This is an action brought by General Motors Corporation pursuant to Title 49 U.S.C.A. § 17(9) to set aside certain Orders of the Interstate Commerce Commission and to enjoin the enforcement of such Orders. Jurisdiction is based on 28 U.S.C. § 1336 and venue on 28 U.S.C. § 1398.

On March 5, 1959, plaintiff, a corporation engaged in the manufacture and sale of new automobiles, filed a complaint with the Interstate Commerce Commission (hereinafter referred to as the ICC) alleging that the rates charged by certain Railroads, which have intervened as defendants in the instant case, on shipments of iron or steel forgings used in assembling new automobiles were inapplicable and also unjust and unreasonable. The shipments consisted of "bumper back bars" and "stabilizer bars" in straight or mixed carloads shipped to several of plaintiff's assembly plants throughout the United States from its production facilities at Lansing and Flint, Michigan, and from the plants of unaffiliated suppliers at Coraopolis, Pennsylvania, Gary, Indiana, and Detroit, Michigan. In assembling an automobile, a stabilizer bar is attached to the underside of an automobile to equalize stresses and strains and also functions as an anti-roll device to minimize the danger of overturning and as an aid in operating performance, while a bumper back bar is used as a support for chrome-plated bumpers installed on the front and rear of automobiles.

The parties stipulated before the ICC and this Court that both articles are made by a forging process and transported from the plant where made to the automobile assembly factory, where they are installed on automobiles without any further work being done upon them.

On November 3, 1960, in General Motors v. N. Y. Central Railroad Co., et al., 311 I.C.C. 622, Division Three of the ICC affirmed the hearing examiner's decision and held that these articles are not "forgings" within the meaning of the freight tariffs published by the Railroads, as claimed by the plaintiff, but that the applicable rates on bumper back bars were and are those published for automobile bumpers and bumper fittings, or, in the absence of such description, those on "automobile parts, noibn, iron or steel," and that the applicable rates on stabilizer bars were and are those published for "automobile parts, noibn, iron or steel." In affirming the hearing examiner, Division Three also held that the rates charged on shipments of plaintiff's automobile parts were not shown to be unjust or unreasonable, except "on shipments of stabilizer bars originated by the New York Central" and shipped from Lansing, Michigan, to the extent that these rates exceeded those which were contemporaneously applicable on similar shipments moved over other railroad lines from Lansing. The plaintiff is appealing from those portions of Division Three's decision which held that the

tariffs for such stabilizer bars and bumper back bars were those for automobile parts and not those for forgings, and that there was no showing that the railroads' rates were unjust or unreasonable. In disposing of this matter, the Court has had the benefit of excellent briefs and oral arguments by counsel for all parties.

At the outset, it is advisable that this Court determine precisely its function in reviewing a decision of the ICC, an administrative agency, and to what extent judicial review applies to such agency's findings and conclusions of law.

The scope of judicial review of an administrative tribunal's findings and conclusions is set forth in § 10(e) of the Administrative Procedure Act, 5 U.S.C. A. § 1009(e), which in pertinent part reads as follows:

"So far as necessary to decision and where presented the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of any agency action. It shall * * * (B) hold unlawful and set aside agency action, findings, and conclusions found to be (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; * * * (5) unsupported by substantial evidence in any case subject to the requirements of sections 1006 and 1007 of this title or otherwise reviewed on the record of an agency hearing provided by statute; * * *. In making the foregoing determinations the court shall review the whole record or such portions thereof as may be cited by any party, and due account shall be taken of the rule of prejudicial error."

A reviewing court, under § 10 (e) of the Administrative Procedure Act, 5 U.S.C.A. § 1009(e), must determine whether or not there was substantial evidence on the record considered as a whole to support the findings of an administrative agency. Universal Camera Corp. v. National Labor Relations Board,

340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456. "Substantial evidence" has been defined by the U. S. Supreme Court in the Universal Camera case at p. 477, 71 S.Ct. at p. 459 as follows:

"'[s]ubstantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' Consolidated Edison Co. [of New York] v. National Labor Relations Board, 305 U.S. 197, 229 [59 S.Ct. 206, 83 L.Ed. 126]. Accordingly, it 'must do more than create a suspicion of the existence of the fact to be established. * * * it must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury.'"

However, this requirement of substantial evidence was not intended "to negative the function of" an administrative tribunal like the ICC "as one of those agencies presumably equipped or informed by experience to deal with a specialized field of knowledge, whose findings within that field carry the authority of an expertness which courts do not possess and therefore must respect. Nor does it mean that even as to matters not requiring expertise a court may displace the [Commission's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo*." Ibid. p. 488, 71 S.Ct. p. 465.

In other words, "the judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body", Mississippi Valley Barge Co. v. United States, 292 U.S. 282, 286, 287, 54 S.Ct. 692, 78 L.Ed. 1260, and once this rational basis is established, a court "cannot substitute its own view concerning what should be done." United States v. Pierce Auto Freight Lines, 327 U.S. 515, 536, 66 S.Ct. 687, 90 L.Ed. 821. However, in order for an adminis-

trative tribunal's basic or essential findings of fact to be given "that conclusive weight", those findings must not only be supported by substantial evidence, but such findings must be set out with "clarity and completeness". Colorado-Wyoming Gas Co. v. Federal Power Commission, 324 U.S. 626, 634, 65 S.Ct. 850, 89 L.Ed. 1235.

But, a reviewing court may set aside an administrative agency's order where there is no "warrant in the law" for what it has done, United States v. Pierce Auto Freight Lines, supra, 327 U.S. p. 536, 66 S.Ct. 687; or where its findings and conclusions are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Title 5 U.S.C.A. § 1009.

## DID THE ICC PROPERLY CLASSIFY THE "STABILIZER BARS" AND "BUMPER BACK BARS" UNDER THE APPLICABLE TARIFFS?

Division Three in support of its decision made reference to a note on one tariff description of "forgings" which specifically exempts from such description any article which requires no further work before becoming a finished article for which a specific classification item or rate is provided; pointed out that these articles were forged into predetermined shapes and sizes for installation on certain model automobiles, thereby bringing such articles within the rule of Bundy Tubing Co. v. Michigan Central Railroad Co., 169 I.C.C. 569; and noted that automobile parts lists were published to provide general basis of rates for new automobile parts as they come into existence, while the lists of forgings or manufactured iron and steel articles are intended to cover varied output of steel mills and do not include any article made specifically for automobiles, and that the nature and character of the articles in question, based on their predominant use, were those of automobile parts.

The plaintiff contends that the Commission's decision was arbitrary, capri-

cious, or without support of law or substantial evidence and argues:

1. The language of the tariffs pertaining to forgings is more specific than that pertaining to automobile parts and this specific language precisely covers these two articles.

2. Division Three in its opinion did not consider evidence that the tariffs on forgings were not limited to articles in steel mills and that "bumper back bars" have been commonly known as forgings for many years, but only considered evidence that "bumper back bars" are installed on an automobile and are commonly known in some quarters as bumper fittings, which are automobile parts.

3. It is not proper to classify an article according to its various uses.

4. Division Three's decision is based on two factual misconceptions:

*First,* that these articles are designed for and installed on automobiles, since this ignores the unqualified language of the tariff description on forgings and overlooks the fact that many components of an automobile are not classified in the freight tariffs as automobile parts; and

*Secondly,* that the rates for forgings are intended to cover the output of steel mills since this ignores testimony that the application of the rates for the transportation of iron and steel articles is not restricted or limited to shipments made by steel mills.

5. The defendants cannot show any tariff rule that supports their construction that a particular classification of property is designed for the use of any particular industry, i. e., that the tariffs on forgings were intended for the use of iron and steel mills.

On the other hand, the defendants assert that the decision of Division Three was not arbitrary, capricious, an abuse of discretion, or without support of law, and that such decision was supported by substantial evidence based on the whole record. In support of their position, the defendants contend that:

1. The ICC is not required by law to list every piece of evidence, but is only

required to make findings of ultimate fact.

2. The tariffs on automobile parts are more specific than the tariffs on forgings made of iron or steel.

3. The evidence showed that the automobile parts list included similar articles such as "automobile bumpers or bumper fittings", while the iron and steel lists contained a variety of articles, none of which are automobile parts.

4. The evidence also demonstrated that the articles in question were specifically shipped according to the plaintiff's exact specifications; that their sole use was that of an automobile part; and although an article's use does not determine its rates, such article's primary use determines its status for tariff purposes.

5. The evidence further proved that the automobile parts lists were developed in co-operation with the automobile industry, while the iron and steel articles lists were developed with the co-operation of the iron and steel industry, which supports the defendants' position that the tariffs on forgings were only intended to cover the transportation of iron and steel articles from steel mills and not from automobile manufacturers.

6. Division Three's decision is not based, as the plaintiff maintains, on two factual misconceptions, for the reasons already enumerated and for the further reason that any automobile part which is not classified as such for rate purposes is not used primarily as an automobile part.

7. The Commission construed together the tariffs in question to give them a reasonable construction so that the intention of the framers would be given effect.

The commodity description for forgings in the tariffs of two of the territories * involved in this matter specifically exempt any forging that requires no further work before becoming a finished article and for which a specific classification or rate is provided. In the case of United States v. Gulf Refining Co., 268 U.S. 542, 45 S.Ct. 597, 69 L.Ed. 1082, the Court laid down the rule that "[w]here a commodity shipped is included in more than one tariff designation, that which is more specific will be held applicable" (p. 546, 45 S.Ct. p. 599.) and also held that "[a] lower rate properly may be applied to a product when in an unfinished condition than that applicable to it when finished" (p. 548, 45 S.Ct. p. 600).

The parties agree that the two articles in question do not require any further work before becoming finished products and since the more specific classification governs where two or more classifications may be applicable, the ICC, in order to decide the applicable rate, then had to determine the following questions: (1) whether the tariffs pertaining to automobile parts are more specific than those pertaining to forgings; and (2) whether the two articles involved are within the tariffs on automobile parts.

■ "Automobile parts, noibn, iron or steel" is a catch-all item of a list of more than 100 articles specifically listed in the tariffs under the generic heading "automobile parts," while "forgings, nos" or "forgings, noibn" are also catch-all items of a list of more than 150 articles or descriptions in the tariffs under the generic heading "manufactured iron or steel articles." Although both of these catch-all terms are general in nature, this Court holds that it was not arbitrary, capricious or an abuse of discretion for the Commission to construe the former term as more specific than the latter, since there was substantial evidence from which the Commission could conclude that the catch-all term for automobile parts is restricted to automobile parts made of iron or steel, while the catch-all term for forgings applies broadly to parts made of iron or steel.

* Western Trunk Lines Territory, Uniform Freight Classification 3, Note 10. South-western Lines Territory, Consolidated Freight Classification 21, Note 5.

[7] The Commission, after taking testimony and considering the evidence, decided as an ultimate fact that the articles in question were automobile parts. Section 14(1) of the Interstate Commerce Act, 49 U.S.C.A. § 14(1), does not require the Commission to make detailed findings of fact except in a case where damages are awarded, but only requires the filing of a report stating its conclusions, together with its decision and order. Alabama Great Southern R. R. Co. et al. v. United States et al., 340 U.S. 216, 71 S.Ct. 264, 95 L.Ed. 225. In other words, the Commission is only required to set out ultimate, not evidentiary, facts. Mills v. Lehigh Valley R. Co., 238 U.S. 473, 35 S.Ct. 888, 59 L.Ed. 1414; Meeker & Co. v. Lehigh R. R. Co., 236 U.S. 412, 35 S.Ct. 328, 59 L.Ed. 644. However, the Commission's decision, in the instant case, not only sets out ultimate findings but it also summarizes the evidence relied on to sustain such findings.

As already pointed out, the function of this Court in reviewing the Commission's finding of an ultimate fact is to determine whether or not there was substantial evidence on the record considered as a whole to support such finding. Universal Camera Corp. v. National Labor Relations Board, supra.

Therefore, this Court concludes that there was substantial evidence based on the whole record to support the finding that the two articles in question were automobile parts, and, in so finding, the Commission did not act arbitrarily, capriciously or abuse its discretion. In other words, the evidence upon which the defendants rely, weighed against all the evidence upon which the plaintiff relies, is enough to justify a refusal to direct a verdict in the plaintiff's favor if the trial of such issue were to a jury.

DID THE ICC PROPERLY HOLD THAT THERE WAS NO SHOWING THAT THE RATES APPLIED BY THE RAILROADS ARE UNJUST OR UNREASONABLE?

Division Three, in its opinion, held that the plaintiff had not shown that the rates sought and applied by the Railroads are unjust and unreasonable and summarized the contentions made by plaintiff on this issue as follows:

1. The articles involved compare favorably with other forgings in respect to transportation characteristics—density, value, susceptibility to damage, type of equipment and services required.

2. The price and value of forgings are approximately ¼ to ⅓ that of chrome bumper parts, articles that are subject to automobile parts rates.

3. A comparison of the comparable rates on forgings and those on automobile parts for representative shipments with the fully distributed cost of the railroads' services showed that the automobile parts rates substantially exceeded such full cost.

The ICC expressly rejected plaintiff's third contention, pointing out that the fully distributed cost factor relied on by plaintiff reflects through train operations for short-line miles plus a percentage for circuity and terminal costs and, therefore, has little value in determining the immediate issue, and also noted that "The fact that rates substantially exceed full cost does not establish that they are in excess of a reasonable maximum level".

Although the Commission did not expressly reject the plaintiff's first two contentions, it is apparent from its opinion that it did not consider these two contentions persuasive, since it decided that the plaintiff had not shown that the rates that the railroads sought are unjust or unreasonable.

The plaintiff contends that Division Three's decision does not reflect a consideration of all the relevant evidence involved and argues that the Commission's rejection and disregard of its contentions, plus the fact that the Commission considered only one point, the relation of the rate claimed to the fully distributed cost of transporting the articles involved in one shipment, and that it did not consider the nature of the articles, the value and transportation character-

istics, the cost of service, and the comparison with other rates and earnings, resulted in action which fell short of the requirements of Section 7(c), Title 5 U.S.C.A. § 1006(c), and Section 8(b), Title 5 U.S.C.A. § 1007(b), of the Administrative Procedure Act that the whole record be considered and that the record shall show the ruling upon each such finding, conclusion or exception presented.

In response, the defendants contend, in support of Division Three's decision on this issue, that:

1. The plaintiff has the burden of showing that the rates are unreasonable or unjust and that the Commission is only required to set forth its findings of ultimate, not evidentiary, facts.

2. A failure to give to the evidence the weight claimed for it by one of the parties does not amount to ignoring such evidence.

3. The evidence showed that the rates on automobile parts applied to over 100 articles and to all automobile shipments, and that the best test of determining the reasonableness and justness of the rates is by a comparison with those applicable to the same or similar commodities.

4. The plaintiff did not make any attempt to prove that the rates and charges applicable to the articles in question were unjust or unreasonable as compared with the rates applicable to the other automobile parts.

5. The fact that the rates on automobile parts substantially exceed the full cost of transportation does not establish that the rates are in excess of a maximum reasonable level.

The Court agrees with defendants' contentions on this issue.

The Commission, as previously pointed out, is only required to set out ultimate, not evidentiary, facts, Mills v. Lehigh Valley R. Co., supra; Meeker & Co. v. Lehigh R. R. Co., supra; and need not make detailed findings of fact except in the case where damages are awarded, but need only file a written report stating its conclusions, together with its decision and Order. Alabama Great Southern R. R. Co. et al. v. United States et al., supra. It is this Court's opinion that the Commission met these requirements.

The precise contention here made by plaintiff that the Commission ignored certain material evidence, as indicated by its decision, which violated the requirements of 5 U.S.C.A. § 1007(b), was before a three judge court of this District in the case of Columbia Transportation Company v. United States, D.C., 167 F.Supp. 5, where the Court in a thorough, well-reasoned opinion said:

"The fact that the Commission did not in its report discuss various portions of testimony offered by plaintiffs, and give its reasons why it did not accept such evidence as controlling its decision, does not, in our opinion, constitute ignoring that evidence. Inasmuch as the Commission's report contained ultimate facts which it found from the record, it cannot be said that the Commission ignored any evidence that was before it. Failure to give to evidence the weight claimed for it by a party does not amount to ignoring such evidence.

\*     \*     \*     \*     \*     \*

"We do not think that the Commission's report should be found inadequate because it did not discuss the evidence in detail. It is true that the report does not specifically refer to all of the evidence offered by the plaintiffs (protestants) but it was not necessary that the Commission first refer at length to the protestants' evidence and then say why it did not accept it or why it gave greater weight to evidence opposed to it. If the findings expressed the Commission's essential factual conclusions, and such conclusions constitute the basis for the Commission's disposition of the matter before it, it impresses us that such findings are sufficient."

Also see United States v. Pierce Auto Freight Lines, supra, 327 U.S. 515, at p. 529, 66 S.Ct. 687, at p. 695, where the Court stated:

"Given that the report contains all essential findings required, c.f. [State of] Florida v. United States, 282 U.S. 194, [51 S.Ct. 119, 75 L. Ed. 291] the Commission is not compelled to annotate to each finding the evidence supporting it."

The only remaining question is whether there is substantial evidence based on the whole record to support the ICC's finding that the plaintiff failed to show that the rates applied by the Railroads to the two articles in question are unreasonable or unjust. Universal Camera Corp. v. National Labor Relations Board, supra.

Plaintiff relies heavily on evidence showing that the rates on automobile parts, as compared to those on forgings, substantially exceeded the full cost of transportation, in that the tariffs on automobile parts ran from 2 to 2½ times that of cost, while those on forgings ranged from 14% to 72% in excess of cost. However, this evidence was only a small part of the total evidence relating to this issue. The evidence also showed that the rates on automobile parts applied to over 100 articles and to all automobile parts shipments, and that plaintiff made no attempt to prove that the rates charged on the articles in question were unjust or unreasonable as compared with the rates applicable to the other automobile parts.

The best test for determining the reasonableness and justness of rates is by a comparison of those applicable to the same or similar commodities. See Summer & Co. v. Erie Railroad, 262 I. C.C. 43, where the Commission, in discussing the question of reasonableness said:

"In this connection, we have often said that one of the best tests of the reasonableness of rates is comparisons with other rates on the same commodity in the same general territory. [Citing cases] And this view has received approval by the courts. Youngstown Sheet & Tube Co. v. United States, 295 U.S. 476 [55 S.Ct. 822, 79 L.Ed. 1553]; United States v. Northern Pac. Ry. Co., 288 U.S. 490 [53 S.Ct. 406, 77 L.Ed. 914]; City of Harrisonburg v. Chesapeake & O. Ry. Co. [D.C.], 34 Fed.Supp. 640."

This Court holds that there was substantial evidence based on the whole record to support a finding by the Commission that the plaintiff, which has the burden of proof, did not show that the rates are unjust or unreasonable. In other words, there was enough evidence for a Court to refuse to direct a verdict for the plaintiff if the trial were to a jury.

The decision and Order of the ICC on both the applicability and reasonableness of the rates should be affirmed. An appropriate Order may be submitted.