## WILLAMETTE IRON & STEEL WORKS v. BALTIMORE & O. R. R. CO. et al.

District Court, D. Oregon. February 27, 1928.

No. 9907.

Carriers ⟨⊸⟩30—Special reduced rates fixed by schedules for steel ship plates held not applicable to plates not intended for and not used in construction of ships.

The reduced interstate rate fixed by tariff schedules for steel ship plates *held* to apply only to plates intended for use in the construction of ships, and tested and approved for that use, and shipments of plates not so intended nor used and not so tested and approved, and which were clearly classifiable under a higher rate, *held* not entitled to the special rate.

At Law. Action by the Willamette Iron & Steel Works against the Baltimore & Ohio Railroad Company and others. Judgment for defendants.

See, also, 25 F.(2d) 521.

Teal, Winfree, McCulloch & Shuler, of Portland, Or., for plaintiff.

Carey & Kerr, of Portland, Or., for defendant.

BEAN, District Judge. This is an action brought by the complainant against sundry railroad companies to recover reparation as awarded by the Interstate Commerce Commission. The facts are that between February 26, 1920, and August 18, 1920, the complainant shipped over the lines of the defendant roads from points in Pennsylvania, Delaware, and Indiana, thirty carloads of steel plates, gauge No. 11 or heavier. At the time the shipments moved, the published tariffs of the defendant companies specified under the rates applicable to structural iron and steel one rate on "plate (No. 11 or heavier, punched or not punched, bent or not bent)," and another and a lower rate on "plates, ship." The complainant was charged and paid the higher rate. It later filed a petition with the Interstate Commerce Commission, alleging that the rate assessed and paid by it was unlawful and not legally applicable, and praying for reparation in an amount measured by the difference between the charges actually assessed and paid and that on "plates, ship."

The Commission found: That, upon application of the shipbuilding industry of the Pacific Coast, "after correspondence with various steel companies and railroad traffic officials, the Director of Traffic of the United States Railroad Administration, concluded that rates could be published limited in application to steel plates used in ship construction, and that ship plates could mean only plate steel of the thickness required for hull construction which had been prepared specially for that purpose, and tested and approved for such use by Lloyds Register of Shipping or other recognized classification society" and "as a result the lower rates on ship plates was published, effective February 25, 1920." "That complainant manufactured logging engines and boilers, marine boilers, and steel pipe. It also does repair work on steel ships," and "has replaced plates in the damaged hull of a vessel with steel plates purchased for · logging engine boilers," and has "manufactured welded steel pipe out of steel plates that had been tested and approved for hull construction." That "there is no substantial difference in size, gauge, process of manufacture, transportation characteristics, or liability to damage in transit between steel plates used for hull construction and those shipped to complainant." And, as a conclusion, that the rates "contemporaneously applicable on ship plates were applicable on complainant's shipment," and "that it was damaged in the amount of the difference between the charges paid and those which would have accrued at the rates herein found applicable, and that it is entitled to reparation with interest."

The carriers declined to comply with the

order of the Commission, and hence this action. The defendants admit the shipments as alleged and the proceedings before and the order of the Interstate Commerce Commission, but challenge the findings of the commission, the effect of which is that the complainant's shipment was in fact ship plates within the meaning of the tariff, although there is no such specific finding.

As already ruled in this case, the findings of the Commission are only prima facie evidence, and interpose no obstacle to full contestation of the issues, and take no question of fact from the jury.

The complainant's shipments were undoubtedly covered by the tariff designated "plates No. 11 or heavier," and in my opinion were not entitled to be classified as ship plate within the meaning and intention of the tariff fixing the rate on such commodity. In publishing a rate on ship plate, the manifest purpose of the Railroad Administration was to encourage shipbuilding, and I think the record fairly indicates that the term used for that purpose had a definite recognized trade meaning at the time the tariff was published, and was understood by manufacturers, carriers, and shippers to be plates to be used in ship construction which had been tested and approved for such use by some regular classifying society, and were used in the tariff to distinguish the plates designed for such use from the general description, "plates No. 11 and heavier." The complainant was not engaged in building ships, nor was its commodity used or intended to be used for that purpose, nor was it tested or approved for such use by any recognized classification society.

I conclude, therefore, the complainant is not entitled to relief demanded. Findings and judgment may be prepared accordingly.