## WILLAMETTE IRON & STEEL WORKS v. BALTIMORE & O. R. CO. et al.*

Circuit Court of Appeals, Ninth Circuit.
November 5, 1928.

No. 5492.

*Rehearing denied January 14, 1929.

Teal, Winfree, McCulloch & Shuler and William C. McCulloch, all of Portland, Or., for appellant.

Carey & Kerr and Chas. A. Hart, all of Portland, Or., for appellees.

Before RUDKIN and DIETRICH, Circuit Judges, and NORCROSS, District Judge.

RUDKIN, Circuit Judge. This was an action to enforce a reparation order of the Interstate Commerce Commission in a proceeding brought by the Willamette Iron & Steel Works against numerous transportation companies. The order was based on overcharges on shipments of structural steel from Eastern points to Portland, Or. It appears from the report of the Commission that in August, 1919, the shipbuilding interests on the Pacific Coast applied to the United States Railroad Administration for a reduction in the rates on steel plates used in ship construction, claiming that the continued existence of the steel shipbuilding industry in that section depended in a large measure on a reduction in rates on steel, to enable shipbuilders there to meet the competition of shipbuilders in Eastern states and in the Orient. After correspondence with various railroad traffic officials, the Director General of Railroads concluded that rates could

be published, limited in their application to steel plates used in ship construction, and that ship plates could mean only plate steel of the thickness required for hull construction, which had been prepared specially for that purpose and tested and approved for such use by Lloyd's Register of Shipping, or other recognized classification society. Lloyd's Register is one of the several classification societies or bureaus organized to promote the welfare of shipbuilding and engineering. They maintain inspectors or surveyors at steel mills to test steel intended for use in the construction of ships. Ships are classified according to their construction and the materials entering into them, and marine insurance is based largely upon such classification. The applicable rates, at the time the application for reduction to the Director General of Railroads was made, were based on the following classification: "Plate (No. 11 or heavier, punched or not punched, bent or not bent)." The application of the Pacific Coast shipbuilders for a reduction was granted, and a lower rate was put in effect on and after February 25, 1920, on "Plates, ship." The Willamette Iron & Steel Works contended that the lower rates, in effect on and after February 25, 1920, were applicable to its shipments, but the transportation companies insisted upon and collected the earlier and higher rates. Upon a hearing before the Interstate Commerce Commission, that body found that the lower rate was applicable, and granted reparation, based on the difference between the two rates.

The complaint is in the usual form in such cases, setting forth the shipments, the rates collected, the proceedings before the Interstate Commerce Commission, the order of the Commission, and the refusal of the transportation companies to comply therewith. The answer of the transportation companies admitted the shipments, the proceedings before the Interstate Commerce Commission, the order of the Commission, and their refusal to comply therewith, and averred affirmatively that the rates charged and collected from the plaintiff for the transportation of the shipments referred to in the complaint were the rates duly filed and published in the tariffs then effective for the transportation of structural iron and steel, consisting of plates (No. 11 and heavier); that the rates claimed by the plaintiff, and which the Interstate Commerce Commission attempts to make effective, were applicable only to ship plates; that the term "ship plates," at the time of the transportation, was under-

stood by carriers and shippers alike to mean steel plates which, prior to the transportation, had been examined by a classification bureau or organization and stamped and certified thereby; that none of the shipments made by the plaintiff were within the term "ship plates," as so understood, and that the structural iron and steel rate applied by the defendants at the time of the transportation was the only lawful rate applicable to such shipments. A motion was made to strike this defense, but the motion was overruled. A demurrer was then interposed on the ground and for the reason that the facts stated in the answer did not constitute a defense, but the demurrer was likewise overruled. 25 F.(2d) 521. A hearing was later had before the court without a jury, by written stipulation of the parties, and, after finding the facts in accordance with the affirmative answer or defense, the court entered the judgment of dismissal [(D. C.) 25 F.(2d) 522] from which this appeal is prosecuted.

In support of its appeal, the appellant contends in substance that the court below was without jurisdiction to review the questions determined by the Interstate Commerce Commission, or to inquire into the meaning of the published tariffs or their application to the shipments in question; in other words, that it was the duty of that court to enforce the order of the Commission, without any inquiry into its merits. This contention is not borne out by the language of the statute, and an attempt on the part of Congress to give any such effect to the orders of an administrative board would be open to grave constitutional objections. Section 16 of the Act to Regulate Commerce (49 USCA § 16) provides that a suit to enforce a reparation order shall proceed in all respects like other civil suits for damages, except that on the trial of such suit the findings and order of the Commission shall be prima facie evidence of the facts therein stated. The term "prima facie evidence" has a well-defined meaning and has been many times construed by the Supreme Court. Thus, in Meeker & Co. v. Lehigh Valley R. R., 236 U. S. 412–430, 35 S. Ct. 328, 59 L. Ed. 644, Ann. Cas. 1916B, 691, it was urged that the provision of section 16, that the findings and order of the Commission shall be prima facie evidence of the facts therein stated, was repugnant to the Constitution, because it infringed upon the right of trial by jury and operated as a denial of due process of law. In answering this contention, the court said:

"This provision only establishes a rebuttable presumption. It cuts off no defense,

interposes no obstacle to a full contestation of all the issues, and takes no question of fact from either court or jury. At most therefore it is merely a rule of evidence. It does not abridge the right of trial by jury or take away any of its incidents. Nor does it in any wise work a denial of due process of law. In principle it is not unlike the statutes in many of the states whereby tax deeds are made prima facie evidence of the regularity of all the proceedings upon which their validity depends. Such statutes have been generally sustained, * * * as have many other state and federal enactments establishing other rebuttable presumptions. * * * An instructive case upon the subject is Holmes v. Hunt, 122 Mass. 505 [23 Am. Rep. 381], where, in an elaborate opinion by Chief Justice Gray, a statute making the report of an auditor prima facie evidence at the trial before a jury was held to be a legitimate exercise of legislative power over rules of evidence and in no wise inconsistent with the constitutional right of trial by jury. And in Chicago, etc., R. R. v. Jones, 149 Ill. 361, 382 [37 N. E. 247, 24 L. R. A. 141, 41 Am. St. Rep. 278], a like ruling was made in respect of a statutory provision similar to that now before us."

In Mills v. Lehigh Valley R. R., 238 U. S. 473–482, 35 S. Ct. 888, 892 (59 L. Ed. 1414), Mr. Justice Hughes said:

"The statutory provision merely established a rule of evidence. It leaves every opportunity to the defendant to contest the claim."

In Spiller v. Atchison, T. & S. F. Ry. Co., 253 U. S. 117, 40 S. Ct. 466, 64 L. Ed. 810, the court stated the facts as follows:

"Defendants, endeavoring to show the insufficiency of the evidence upon which the findings and order of the Commission were based, introduced a transcript of the stenographer's notes of the testimony taken upon the hearing of the reparation claims; following this by introducing a sample page taken from one of the exhibits introduced before the Commission as illustrative of the form of exhibits there introduced. After other evidence, not necessary to be mentioned, and a request for judgment in favor of defendants, and for certain rulings on points of law that would have produced that result, all of which were refused, the case was closed."

The District Court gave judgment for the plaintiff, but the judgment was reversed by the Circuit Court of Appeals (249 F. 677), and in reversing the judgment of the latter the Supreme Court said:

"The transcript of the testimony taken by the Commission, as introduced in evidence in the District Court, forms the basis of the decision of the Circuit Court of Appeals that the reparation order was unsupported by evidence. But the transcript shows that important documentary evidence was introduced, and furnished the principal foundation for the findings made. This documentary evidence (except the single sheet offered for purposes of illustration) was not introduced in the District Court, in order, as stated by counsel, to 'avoid introducing a number of papers that would almost fill a farm wagon.' But obviously we hardly could sustain a decision rejecting the reparation order upon the ground that there was not sufficient evidence before the Commission to support it when the whole of the evidence that was before the Commission was not produced."

Here was a clear recognition of the right of the court to reject the reparation order of the Commission, if there was not sufficient testimony before the Commission to support it. Further on in the same opinion the court said:

"And the fact that a reparation order has at most only the effect of prima facie evidence, * * * being open to contradiction by the carrier when sued for recovery of the amount awarded, is an added reason for not binding down the Commission too closely in respect of the character of the evidence it may receive or the manner in which its hearings shall be conducted."

For these reasons, the right of the court below to determine that there was not sufficient testimony before the Commission to support the reparation order was in our opinion beyond question. Indeed, every order of the Commission must give way, if there is no competent testimony to support it. In Interstate Commerce Commission v. Louisville & Nash. R. R., 227 U. S. 88, 33 S. Ct. 185, 57 L. Ed. 431, the court said:

"A finding without evidence is arbitrary and baseless. And if the government's contention is correct, it would mean that the Commission had a power possessed by no other officer, administrative body, or tribunal under our government. It would mean that where rights depended upon facts, the Commission could disregard all rules of evidence, and capriciously make findings by administrative fiat. Such authority, however beneficently exercised in one case, could be injuriously exerted in another; is inconsistent with rational justice, and comes under the Constitution's condemnation of all arbitrary exercise of power.

"In the comparatively few cases in which such questions have arisen it has been distinctly recognized that administrative orders, quasi judicial in character, are void if a hearing was denied; if that granted was inadequate or manifestly unfair; if the finding was contrary to the 'indisputable character of the evidence.' "

There is a suggestion in the brief that the appellees should have brought a suit in equity to set aside the reparation order, but such a course was not necessary, if permissible. The statute gave them the right to defend in a proceeding brought to enforce the order, and that right they have invoked in this case. Indeed, it might well be claimed that the remedy at law was full, complete, and adequate, and that a court of equity was without jurisdiction; but, be that as it may, it was their right and privilege to interpose the defense in a suit to enforce the order of the Commission.

The findings of the trial court sustain the judgment, and, inasmuch as the testimony has not been brought here by bill of exceptions, the question of the sufficiency of the testimony to support the findings cannot be inquired into.

The judgment is affirmed.