### HACKNEY BROS. BODY CO. v. NEW YORK CENT. R. CO. et al.

#### Civ. No. 236.

United States District Court
E. D. North Carolina, Wilson Division.

Aug. 1, 1949.

466

Connor, Gardner & Connor, Wilson, N. C., W. Ray Alexander, Savannah, Georgia, for plaintiff.

Lucas & Rand, Wilson, N. C., Leo P. Day, Chicago, Ill., F. S. Spruill, Rocky Mount, N. C., for defendants.

GILLIAM, District Judge.

This action was instituted to enforce a reparation order of the Interstate Commerce Commission requiring the defendants to pay the plaintiff certain alleged unreasonable charges on freight shipments. The defendant carriers failed to make payment within the time prescribed, and several months later suit was instituted in this Court pursuant to the terms of the Interstate Commerce Act, § 16(2), 49 U.S.C.A. § 16(2), providing that when a carrier has failed to comply with an order of the Commission for the payment of money, the complainant for whose benefit the order was made may file his petition in the District Court setting forth his claim for damages based on the order of the Commission. By agreement the case was heard without a jury.

To the petition filed in this Court, the defendants filed answer setting up the following grounds of defense:

(1) The Commission's findings and order are not supported by substantial evidence of record before the Commission.

(2) The order does not contain and is not supported by essential findings of fact necessary to support an award.

(3) The evidence before the Commission requires a determination that the assailed rates were not unreasonable or otherwise unlawful.

(4) The Commission's findings and order were made in disregard of the defendants' lawfully published tariffs, notwithstanding such tariffs have the force of a statute.

(5) The Commission's findings and order would nullify and hold for naught the requirements of General Orders Nos. 1 and 18 of the Office of Defense Transportation, which were promulgated with other regulations to aid and promote the war effort under authority conferred by the President of the United States.

(6) The basic or essential findings of fact made by the Commission's report are erroneous and contrary to the facts.

Plaintiff, a corporation manufacturing motor vehicle cabs at Wilson, North Carolina, complained to the Commission that on three shipments of hardware and freight automobile parts the rates charged were inapplicable and unreasonable. The matter was submitted to the Commission on the so-called shortened procedure, under which affidavits as to the facts together with written arguments were presented by the parties in lieu of oral hearing. The Commission found that less-than-carload charges collected on the three shipments from Elkhart, Indiana, to Wilson, North Carolina, were unreasonable to the extent that they exceeded certain carload rates stated in the appendix to its report, Hackney Bros. Body Co. v. New York Central R. Co., 266 I.C.C. 795, 799, plus certain amounts allowed to defendants for pick-up of the shipments at the consignor's plant by the origin line's truck, and for loading the shipments in its freight house. 268

I.C.C. 345, 346. Petitions for rehearing filed by defendants were denied by the Commission.

The plaintiff's evidence herein consisted of the reports and orders of the Commission. The defendants submitted a complete record of the proceedings before the Commission, and in addition introduced in evidence certain testimony and documentary evidence in refutation of the facts recited in the Commission's reports.

Plaintiff seems to take the position that the Commission is an administrative body with sole authority to determine the plaintiff's right to an award of damages, and that the Court has no alternative but to enforce its award. The defendants contend that there is no competent evidence in the record to support the findings of the Commission and that its order is therefore void, and that the evidence defendants have introduced here definitely disproves the several findings of fact in the Commission's reports.

█ The statute on which this action is based, Section 16, sub. 2, Interstate Commerce Act, 49 U.S.C.A. § 16, sub. 2, provides: "Such suit in the district court of the United States shall proceed in all respects like other civil suits for damages, except that on the trial of such suit the findings and order of the commission shall be prima facie evidence of the facts therein stated." The plaintiff established a prima facie case under this statute by introducing in evidence the findings and order of the Commission. The provisions of the statute, however, merely establish a rebuttable presumption and, in effect, amount to a rule of evidence. Mills v. Lehigh Valley Railroad Company, 238 U.S. 473, 35 S. Ct. 888, 59 L.Ed. 1414; Meeker v. Lehigh Valley Railroad Company, 236 U.S. 412, 414, 35 S.Ct. 328, 59 L.Ed. 644, Ann.Cas. 1916B, 691; Spiller v. Atchison, T. & S. F. Railway Company, 253 U.S. 117, 131, 40 S. Ct. 466, 64 L.Ed. 810; Southern Railway Company v. Eichler, 8 Cir., 56 F.2d 1010, 1017.

█ The Interstate Commerce Commission is an administrative board. Its duties are prescribed by law and its func-

tions have been designated as quasi-legislative and quasi-judicial. Baer Brothers Mercantile Co. v. Denver & Rio Grande Railroad Company, 233 U.S. 479, 34 S.Ct. 641, 644, 58 L.Ed. 1055. In that case the Court said: "But awarding reparation for the past and fixing rates for the future involve the determination of matters essentially different. One is in its nature private and the other public. One is made by the Commission in its quasi judicial capacity to measure past injuries sustained by a private shipper; the other, in its quasi legislative capacity, to prevent future injury to the public."

In performing an administrative or quasi-legislative function, the Commission ascertains the facts pertaining to matters in which the public is interested and is not limited in its investigation by a rigid adherence to the strict rules of evidence observed by judicial tribunals. Interstate Commerce Commission v. Louisville & Nashville Railroad Company, 227 U.S. 88, 93, 33 S.Ct. 185, 57 L.Ed. 431. The courts in such cases may inquire as to whether the Commission has acted within the scope of its authority under the law, whether its findings are supported by substantial evidence, and whether its findings are sufficient to sustain its order. The credibility of witnesses, the weight of the evidence, and the conclusions to be drawn therefrom in matters before the Interstate Commerce Commission are for it to determine; and its findings of fact will not be reviewed by the courts if supported by substantial evidence. United States v. Louisville & Nashville Railroad Company, 235 U.S. 314, 320, 35 S.Ct. 113, 59 L.Ed. 245; Assigned Car Cases, 274 U.S. 564, 580, 581, 47 S.Ct. 727, 71 L.Ed. 1204.

█ The Commission in an action under the statute for reparation is performing a quasi-judicial function. As the action is one for the payment of money, private in its nature, and the public is not concerned, there are substantial reasons why the rules of law governing the admission of evidence should be more carefully observed by the Commission. The evidence in such cases should be as competent and conclusive as is necessary to

support a judgment in an action at law, as the Commission itself recognized in the rule it announced in Anadarko Cotton Oil Company v. Atchison, Topeka & Santa Fe Railway Company, 20 I.C.C. 43, 49, as follows: "An award of the Commission in reparation of damages resulting from a violation of the act to regulate commerce is not enforceable as such, but in a suit in court for such damages the findings and order of the Commission are prima facie evidence in support thereof. It follows that the Commission is not justified in awarding damages in any case except on a basis as certain and definite in law and in fact as is essential to the support of a final judgment or decree requiring the payment of a definite sum of money by one party to another."

In actions to enforce reparation orders, the courts have examined the evidence before the Commission. Thus, in Southern Railway Company v. Eichler, supra, the Circuit Court of Appeals for the Eighth Circuit said [56 F.2d 1017]: "But the evidence may always be examined to ascertain whether the findings of the Commission are properly supported (State of Florida v. United States, 282 U.S. 194, 215, 51 S.Ct. 119, 75 L.Ed. 291); and, in an action to enforce reparation awarded a shipper, the findings and order of the Commission are prima facie only, and not conclusive evidence of the facts therein stated. This provision of statute (section 16, Interstate Commerce Act) 'only establishes a rebuttable presumption. It cuts off no defense, interposes no obstacle to a full contestation of all the issues, and takes no question of fact from either court or jury. At most, therefore, it is merely a rule of evidence.' "

In cases of this kind the court is charged with the power and duty to ascertain whether the findings of the Commission are supported by substantial evidence, and it necessarily follows that the Court must consider the competency and probative value of the evidence. Plaintiff relies on a statement by the Court in the case of City of Danville v. Chesapeake & Ohio Railway Co., D.C., 34 F.Supp. 620, at page 625, but the language quoted expressly recognizes that the Commission's action must be "based on substantial evidence taken in due course."

If there is not competent evidence in the record, of course, there is no substantial evidence to support the findings. A finding unsupported by any evidence is void. Chicago Junction Case, 264 U.S. 258, 265, 44 S.Ct. 317, 68 L.Ed. 667. The Court is not required by the statute, or any rule of law, to accept as conclusive the action of the Commission. The statute makes the Commission's findings and order only prima facie evidence of the facts therein stated and not conclusive evidence. Any other construction would be subject to very definite constitutional objections. To adopt the plaintiff's theory would make the findings and order conclusive, and plaintiff's position therefore cannot be sustained.

In Willamette Iron & Steel Works v. Baltimore & Ohio R. Co., 29 F.2d 80, 81, the Circuit Court of Appeals for the Ninth Circuit said: "In support of its appeal, the appellant contends in substance that the court below was without jurisdiction to review the questions determined by the Interstate Commerce Commission, or to inquire into the meaning of the published tariffs or their application to the shipments in question; in other words, that it was the duty of that court to enforce the order of the Commission, without any inquiry into its merits. This contention is not borne out by the language of the statute, and an attempt on the part of Congress to give any such effect to the orders of an administrative board would be open to grave constitutional objections."

(1) I come now to a consideration of the evidence before the Commission in this case, and a determination of whether it acted without evidence or upon no substantial evidence. The record contains an affidavit of plaintiff's Secretary-Treasurer and General Manager concerning its corporate status and location; and stating that it is engaged in the manufacture and sale of automobile freight vehicle cabs, bodies and parts thereof; that it purchased the material in question from the consignor, F.O.B. cars, Elkhart, Indiana; that the consignments with the weights shown were

delivered at plaintiff's plant at Wilson in three cars, on which complainant paid and bore the freight charges and taxes; that the shipments were unloaded by complainant, and claims for overcharges filed with the carriers and declined by them. In addition, there was filed with the Commission for plaintiff a so-called Memorandum of Facts signed and sworn to by its attorney, W. Ray Alexander, of Chatham County, Georgia. Without professing actual knowledge of the facts pertaining to these shipments from Elkhart, Indiana, to Wilson, North Carolina, almost three years before the date of his affidavit, the affiant substantially reiterated what was stated in the affidavit of plaintiff's Secretary-Treasurer and General Manager previously described, and in addition stated that certain rates were applicable to the Automobile Parts shipped (which rates, as will later be pointed out, were not those provided in defendants' tariffs on Automobile Body Parts but on Building Metal Work Materials) and that certain tariff rules also were applicable; but from these the witness omitted pertinent provisions, as did the Commission in quoting from such rules in its report. The copies of bills of lading attached to the memorandum specified less-than-carload handling in each instance, i.e., "Route c/o C. & O. Package Car at Chicago c/o A.C.L. at Richmond," a "package car" being a car used for transporting less-than-carload freight. Cf., In the Matter of Container Service, 173 I.C.C. 377, 381-2.

The Commission's report in this case, 266 I.C.C. 795, 796, refers to defendants' evidence showing that—" * * * the shipper requested pick-up service; that the tariff provision for pick-up service applied only to less-than-carload freight; that the bills of lading contained instructions to route 'c/o C. & O. Package Car at Chicago c/o A.C.L. at Richmond' and that, notwithstanding its plant is reached by an industrial track, the shipper did not ask that cars be placed at its warehouse for loading."

However, the Commission, in its report, found (1) that defendants disregarded the routing instructions and transported the shipments via the lines of the New York Central to Cincinnati; (2) that the route the shipments traveled is the route normally used for carload traffic; (3) that less-than-carload service was not required or rendered. I find nothing in the record before the Commission to support any of these findings upon which its order was based.

On the trial of the case defendants offered evidence in refutation of the Commission's findings of fact. The deposition of the consignor's purchasing agent, who was also in charge of its shipping at the time this freight moved, shows that the consignor directed that the freight in question be transported as less-than-carload shipments at less-than-carload rates, instead of loading them at its plant on its own private side-track for carload movement. Due to the remodeling of the consignor's plant at the time there was lack of space to store the freight for carload shipment and the shortage of man power during that war period contributed to its decision to ship as less-than-carload traffic. Shipments consigned to plaintiff by the same consignor after remodeling in its plant was completed were tendered to the railroads as carload shipments. The change in routing from "the C. & O. Package Car at Chicago" was instructed by the consignor, after the origin railroad's agent had called its attention to the fact that rates via the New York Central and Cincinnati, viz., $1.37 and $1.29 per hundred pounds, were cheaper than applied via Chicago, $1.91 and $1.80, respectively, or an aggregate saving of $616.-27 on the shipments involved, so that the handling given this freight by the defendants conformed to the shipper's instructions. The deposition of the consignor's representative to this effect was corroborated by testimony of the railroad agent at Elkhart, and not controverted by plaintiff.

In addition to the foregoing evidence, defendants introduced the rules of the governing Southern Classification, naming the conditions and circumstances under which carload or less-than-carload rates are applied, from which it appears that certain pertinent provisions were omitted in the Commission's quotation of the classification rules on page 796 of its report, 266 I.

C.C. 795, 796. For example, the quoted portion of Rule 16 neglects to include the words "subject to Rule 15", the latter rule stating "that the provisions of this rule (for applying carload charges on LCL shipments) will not apply on shipments on which pick-up or delivery service has been performed." A pick-up service was performed by the origin line in connection with each of the shipments involved. In a more recent report by a division of the Commission (consisting of three commissioners) the same tariff rules were considered in their entirety, in connection with a shipment on which similar pick-up service was performed at point of origin and delivery at destination made direct to complainant, and the division there held (contrary to the ruling of the commissioner here) that carload rate was inapplicable because Rule 15 of the classification "specifically excludes shipments that have been accorded pick-up service. The less-than-carload rate charged was the applicable rate." Radcliff Gravel Company v. Gulf, M. & O. R. Co., 272 I.C.C. 301, 303.

Defendants also introduced in evidence general orders Nos. 1 and 18 (Revised) of the Office of Defense Transportation, which were designed to conserve railroad equipment in aid of the war effort and in effect at the time these shipments moved. The first named directive prohibited any railroad from accepting or forwarding a car containing less than 10 net tons of merchandise, except under certain described conditions not pertinent here. The weight of the freight loaded in two of the cars did not exceed 18 tons and that in the third car was 21.33 tons. This freight was delivered to the origin railroad in small truckloads on three days in respect of the contents of one of the cars and on two days in the case of the other two, so that forwarding any one of these cars with the amount of freight delivered to the railroad on any one day would have been in violation of O.D.T. Order No. 1. In like manner, while O.D.T. Order No. 18 permitted the origin line to forward as less-than-carload shipments the amount of freight loaded in the cars used, the weights shipped were inadequate under the O.D.T. regulation to permit of forwarding them as carload shipments, since they were much below the marked capacities of the cars used and otherwise failed to meet the specified loading requirements. The Commission's report dismisses O.D.T. Order No. 18 from consideration on the ground that the order did not affect tariff minima, but such retroactive nullification of O.D.T. directives does not alter the fact that the railroads, in accepting freight for transportation, were bound by their provisions no less than other governmental regulations promulgated in aid of the war effort and for national defense.

■ (2) Defendants also introduced in evidence tariff provisions covering carload and less-than-carload freight rates in proof of their contention that the rates considered and applied by the Commission were not rates published in their tariffs to apply on the Automobile Body Parts, which the plaintiff admittedly shipped, but were rates designated on such unrelated articles as "Building Metal Work, including Roof Trimmings or Gutterings or Ventilators." In the light of these tariff provisions, I am of the opinion that the Commission proceeded in this case under a misapprehension as to tariff rates applicable. The plaintiff is engaged in manufacturing freight automobile cabs and bodies, not Building Metal Work. See Willamette Iron & Steel Works v. Baltimore & O. R. R. Co., D.C., 25 F.2d 522, at page 523, affirmed in 9 Cir., 29 F.2d 80. Moreover, the showing of defendants with respect to these tariff data, and the proof that even if the carload rates on Automobile Body Parts were applied to the Automobile Body Parts involved here, they would produce higher charges than the application of less-than-carload charges on Building Metal Work, etc., to the weights used, is not contradicted or challenged by the plaintiff.

The findings of the Interstate Commerce Commission in this proceeding are not supported by substantial evidence and the order of the Commission is invalid. Findings of fact, conclusions of law, and an order for judgment will be entered accordingly.

## Findings of Fact.

1. Plaintiff is engaged in the manufacture of freight automobile cabs, bodies and parts thereof with office and principal place of business at Wilson, North Carolina.

2. The defendants are common carriers by railroad engaged in the transportation of freight and passengers between Elkhart, Indiana, and Wilson, North Carolina, as well as between various other points in the United States.

3. On December 10, 1945, plaintiff filed a complaint with the Interstate Commerce Commission, in which it alleged that transportation charges collected by defendants on shipments of automobile parts with hardware consigned to plaintiff at Wilson, N. C., by the Excel Corporation of Elkhart, Indiana, in G.N. Car 24982, Southern Car 156416, and C.R.R. Car 5018, on April 9, 1943, May 8, 1943, and August 21, 1943, respectively, were unreasonable and exceeded charges that should have accrued under defendants' tariffs published and on file with the Interstate Commerce Commission.

4. The proceeding before the Interstate Commerce Commission was submitted on shortened procedure, under which both sides introduced memoranda of evidence by affidavits, accompanied by written arguments, in lieu of oral hearing and argument, following which an individual commissioner (Commissioner Splawn) issued a report dated December 10, 1946, 266 I.C.C. 795, and a supplemental report and order dated April 7, 1947, 268 I.C.C. 345, finding that certain carload rates were properly applicable in lieu of the less-than-carload rates charged, but that the defendants were entitled to reasonable compensation in amounts fixed by the Commission for picking up the freight with their own truck at the consignor's plant in Elkhart, Indiana, and hauling it to their freight house at that point, and also for loading the freight into cars at the freight house in Elkhart. Reparation in the amount of $441.92 with interest was awarded by the Commission.

5. The Commission denied petition by defendants for rehearing and reconsideration by the entire Commission.

6. Defendants failed to make payment of the amount awarded by the Commission within the time prescribed in its order, and several months later suit was instituted in this Court to enforce payment of the award with allowance of attorney's fees.

7. Answers to the complaint were filed by defendants, denying its material allegations and averring that the order of the Commission was arbitrary and without substantial evidence to sustain it, and that the findings on which the order was based were erroneous, were without support in the record, and contrary to the facts.

8. On the trial of this cause on February 24, 1949, plaintiff introduced in evidence the reports and order of the Interstate Commerce Commission and rested its case thereon.

9. Defendants introduced in evidence (1) a certified copy of all the evidence which was before the Commission; (2) a deposition of the consignor's purchasing agent, who also had charge of its shipping at the time the shipments in question were made; (3) testimony of the origin line defendant's agent at Elkhart; (4) the tariff provisions, including rules and rates, governing the transportation of these shipments; (5) regulations of Office of Defense Transportation covering the shipments in question during the war period when the shipments were made; other testimony and documentary evidence pertaining to the types and descriptions of the cars used, the charges assessed, the nature of the service rendered by the defendants, and other data.

10. The material shipped consisted of automobile parts with hardware.

11. The consignor's plant at Elkhart has a private side track for the loading and unloading of carload freight.

12. The freight in question was picked up at the consignor's plant by the origin railroad's truck in small truckloads. The car moved from Elkhart on April 10th contained freight picked up at the consignor's plant by the originating line at various times on April 9th and 10th; the car forwarded on May 7th contained freight sim-

ilarly received from the consignor on May 5th, 6th, and 7th; and the freight in the car out of Elkhart on August 21st was picked up by defendant's truck at various times on August 20th and August 21st.

13. At the time this freight was received by defendants from the consignor, General Order No. 1 of the Office of Defense Transportation prohibited the carriers from forwarding less-than-carload freight with less than ten tons in a car. General Order No. 18 (revised) of the Office of Defense Transportation prohibited the carriers from accepting for transportation any carload freight unless the car used was loaded to capacity or other specified loading requirements were met.

14. The cars used for the transportation of plaintiff's shipments were not loaded to capacity.

15. The bills of lading tendered by consignor to the origin line covering these shipments contained instructions to route them as less-than-carload shipments, namely, "c/o C. & O. Package Car at Chicago c/o A.C.L. at Richmond" but, upon having called to its attention that transportation charges on shipments handled via Chicago were materially higher than when moved over defendants' direct lines through Toledo, Ohio, the consignor changed its routing instructions to the defendants, by ordering defendants to forward the shipments in each instance as less-than-carload freight at less-than-carload rates via Toledo, and the shipments in each instance were so transported by defendants.

16. The freight charges via the route of movement through Toledo were $616.27 less than they would have been if the shipments had been transported via Chicago in the manner directed in the bills of lading tendered to defendants.

17. At the time these shipments were delivered to defendants for transportation, the consignor was remodeling its plant at Elkhart, and for this reason and because of shortage of space in the plant and a shortage of man power, it instructed the defendants to pick up the freight at its plant with their truck and transport the shipments as less-than-carload freight at less-than-carload rates, rather than load the freight into cars itself on its own private side track for transportation as carload shipments at carload rates.

18. Defendants did not disregard the shipper's routing instructions.

19. The route shipments traveled via Toledo, Ohio, was the route normally used by defendants for less-than-carload as well as carload traffic between Elkhart, Indiana, and Wilson, North Carolina.

20. The Commission's report herein recognizes that "a carrier may render less-than-carload service on a carload quantity of freight when the shipper requests such service, and charge less-than-carload rates therefor."

21. The rules of the governing Classification provided that carload charges could not be applied on shipments on which pickup or loading services had been performed by the carriers, or where the freight had been received by the carrier on more than one calendar day.

22. The charges required by the Commission's order to be applied on the Automobile Parts shipped were the carload rates designated in defendants' tariffs to apply on "Building Metal Work, including Roof Trimmings or Gutterings or Ventilators."

23. The charges applicable to these shipments were those named in the carriers' tariffs to apply on Automobile Body Parts, on which articles either the carload or less-than-carload charges in the defendants' tariffs would exceed the amounts actually charged and collected by defendants.

24. The shipments in question were undercharged because of the wrongful application of Building Metal Work rates on the Automobile Body Parts in such shipments.

### Conclusions of Law.

1. Defendants are common carriers by railroad between points in Indiana and North Carolina as well as between other points in the United States and as such are subject to the provisions of the Interstate Commerce Act. 49 U.S.C.A. § 1.

2. The Interstate Commerce Commission is an administrative body created by act of Congress, exercising quasi-legislative and quasi-judicial functions.

3. This suit is brought under Section 16 of the Interstate Commerce Act, 49 U.S.C. A. § 16.

4. The plaintiff established a prima facie case when it introduced in evidence the reports and order of the Commission.

5. The findings and order of the Commission are prima facie only, and not conclusive evidence of the facts therein stated.

6. The order of the Commission herein is unlawful and void for the following reasons:

(a) There was no substantial evidence before the Commission to support its finding that the charges assessed on the Automobile Body Parts shipped from Elkhart, Indiana, to Wilson, North Carolina, were unreasonable, and that the plaintiff was entitled to reparation on such shipments.

(b) The Commission made essential findings in its reports without supporting evidence. •

(c) The Commission's reports and order were made without consideration of pertinent provisions in the governing tariffs.

(d) The Commission's reports and order had the effect o nullifying General Orders 1 and 18 (revised) of the Office of Defense Transportation, which governed operations and transportation services.

7. The charges lawfully applicable to the Automobile Body Parts shipped were those published in defendants' tariffs to apply on Automobile Body Parts.

8. Rates published in defendants' tariffs on Building Metal Work are not properly applicable to the Automobile Body Parts involved in this case.

9. The provisions of defendants' tariffs prohibited the application of carload rates to these shipments because they were picked up by the carrier at consignor's plant and taken to its freight station.

10. The war time orders of the Office of Defense Transportation prohibited defendants from transporting this freight as less-than-carload shipments on the day of its receipt because it was less than ten tons, and as carload shipments at any time because the cars were not loaded to capacity and otherwise failed to meet the loading requirements specified in such orders.

11. Less-than-carload rates are properly applied on a carload quantity of freight when the shipper requests such service and it is rendered by the carriers.

12. The complaint herein will be dismissed.

Defendants will submit an appropriate decree.